CALIFORNIA CEDAR PRODUCTS COMPANY, and Duraflame, Inc., Plaintiffs-Appellees,

v.

PINE MOUNTAIN CORPORATION, Defendant-Appellant.

CALIFORNIA CEDAR PRODUCTS COMPANY, and Duraflame, Inc., Plaintiffs-Appellees,

v.

CONSUMER CHEMICAL CORPORATION, LTD., Defendant-Appellant.

Nos. 83-5589, 83-5617.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 12, 1983.

Decided Jan. 25, 1984.

Martin Horn, Spensley, Horn, Jubas & Lubitz, Los Angeles, Cal., Douglas E. Olson, Lyon & Lyon, Los Angeles, Cal., for plaintiffs-appellees.

H. Michael Brucker, Oakland, Cal., for defendant-appellant.

Before SWYGERT *, TANG and REINHARDT, Circuit Judges.

TANG, Circuit Judge:

Pine Mountain Corporation (Pine Mountain) and Consumer Chemical Corporation Ltd. (Consumer Chemical) appeal the district court's grant of a preliminary injunction restraining their use of the trademark "Duraflame" in the marketing of artificial firelogs. They contend that the district court applied erroneous legal standards regarding trademark abandonment and appropriation in finding that California Cedar Products Company (California Cedar) is entitled to exclusive rights to the "Duraflame" trademark in the United States and Europe. We reject the contention.

■ A district court's grant of preliminary injunction should be reversed only on a showing of clear error of law or abuse of discretion. *Beltran v. Meyers,* 677 F.2d 1317, 1319 (9th Cir.1982). Here, the parties agree that the correct law is that the first party to use an abandoned trademark in a commercially meaningful way, after its abandonment, is entitled to exclusive use and ownership of the trademark and trade dress. In deciding the novel question of when the abandonment of a trademark is effective, the district court considered the totality of the circumstances including the Kingsford-Clorox Company's expression of its intent to abandon the "Duraflame" trademark and its express intent that abandonment be effective on a certain date.

Moreover, the court granted the injunction after first determining: (1) that because California Cedar was the first to use the trademark after its abandonment, California Cedar would likely prevail on the merits and would likely be irreparably injured if Pine Mountain and Consumer Chemical were not enjoined; and (2) that the balance of hardships tipped sharply in favor of California Cedar. There was no abuse of discretion in the court's decision. Accordingly, the grant of the preliminary injunction against trademark infringement is affirmed.

FACTS

In 1969, California Cedar began the manufacture of an artificial firelog. Beginning in 1970, California Cedar Firelog Company, Inc., a separate corporate entity whose name was changed to Duraflame Inc. (Old

* Honorable Luther Merritt Swygert, United States Circuit Judge for the Seventh Circuit, sitting by designation.

Duraflame Inc.), distributed these firelogs and held exclusive rights to the trademark "Duraflame." In the 1970's, California Cedar established a facility in the Eastern United States (New Duraflame Inc.), also for manufacturing Duraflame firelogs. By the mid 1970's Duraflame firelogs had captured 50% of the artificial firelog market in the United States. They were also sold in Canada and Europe. In July 1978, the Kingsford Company (Kingsford-Clorox), a Clorox subsidiary, bought all of the stock of Old Duraflame Inc., including the "Duraflame" trademark; and also bought the land housing New Duraflame Inc. California Cedar retained ownership of the equipment at New Duraflame Inc. although it leased the equipment to Kingsford-Clorox. Old Duraflame Inc. was merged into Kingsford-Clorox and ceased existing as a separate corporate entity. California Cedar continued to manufacture firelogs for Kingsford-Clorox and had joint responsibility for quality control, but it had no trademark rights and was not identified on the product's package.

A company report on March 31, 1982, disclosed Kingsford-Clorox's ultimate objective of withdrawing from the artificial firelog market and writing off for accounting purposes, the good-will associated with the "Duraflame" trademark. However, Kingsford-Clorox continued to order and market the firelogs and negotiated with several corporations, including the parties to this litigation, to transfer the rights to the trademark. On April 21, 1982, Kingsford-Clorox formally decided to terminate its artificial firelog business, authorizing its vice-president, Bolingbroke to abandon the "Duraflame" trademark on a date that he was to determine. On June 8, 1982, Kingsford-Clorox agreed to sell back over $3 million of its extant inventory to California Cedar and granted California Cedar a right of first refusal regarding sale of the trademark.

On June 26, 1982, Bolingbroke apparently attempted to phone California Cedar and Pine Mountain in order to inform them that he was planning to announce the abandonment of the trademark effective June 28, 1982. He reached Pine Mountain on June 26, 1982 but did not reach California Cedar until June 28, 1982.

On June 28, 1982, Kingsford-Clorox published a notice in the Wall Street Journal announcing the abandonment of the "Duraflame" trademark, effective that date. Also on June 28, 1982, Kingsford-Clorox's attorneys filed documents in the United States Patent and Trademark Office abandoning its registered "Duraflame" trademark.

Immediately after the phone-call on June 26, 1982, Pine Mountain inserted some of its firelogs in a Duraflame wrapper, pasted its name under the word "Duraflame" on the wrapper, and shipped the firelogs to Utah. On June 28, 1982, California Cedar began selling Duraflame firelogs in California and interstate commerce, in wrappers bearing the "Duraflame" trademark but identifying California Cedar as the source. On June 30, 1982, Consumer Chemical shipped firelogs from Canada to New York, in wrappers bearing the name "Duraflame" but identifying the manufacturer as Polysolve Corporation, an affiliate of Consumer Chemical with interlocking proprietors, owners and directors. California Cedar's first post-abandonment Canadian sales occurred on August 10, 1982, and its first post-abandonment European sales occurred October 7, 1982.

■ Claiming that it had appropriated the abandoned "Duraflame" trademark by first post-abandonment use, California Cedar brought actions in district court under § 43(a) of the Lanham Trademark Act, 15 U.S.C. § 1125(a) (1982),[1] seeking to enjoin Pine Mountain and Consumer Chemical's use of the trademark. The district court found that California Cedar sold the first "Duraflame" firelogs in the United States

1. Infringement of an unregistered trademark, as is the claim here, falls within the ambit of the Lanham Act's 15 U.S.C. § 1125(a), prohibi-

tion of "false designation of origin." *See New West Corp. v. Nym Co.,* 595 F.2d 1194, 1198 (9th Cir.1979).

and in Europe subsequent to Kingsford-Clorox's formal abandonment of the trademark, and that Consumer Chemical made the initial use of the abandoned trademark in Canada. After consolidating the two cases, the district court enjoined: (1) Pine Mountain from using the "Duraflame" trademark and trade dress in the United States, Europe and Canada; (2) Consumer Chemical from using the "Duraflame" trademark and trade dress in the United States and Europe; and (3) California Cedar from using the "Duraflame" trademark and trade dress in Canada. Pine Mountain and Consumer Chemical appealed.

### Discussion

■ In order to obtain a preliminary injunction, the moving party must show either a combination of probable success on the merits and the possibility of irreparable injury without such injunction, or that serious questions are raised and the balance of hardships tips sharply in the moving party's favor. *Beltran v. Meyers,* 677 F.2d 1317, 1320 (9th Cir.1982). The district court here resolved both tests in favor of California Cedar. Appellants Pine Mountain and Consumer Chemical primarily challenge the determination that California Cedar is likely to prevail on the merits.

### 1. Probability of Success on the Merits

■ In analyzing an appellant's likelihood of success on the merits, this court considers whether the district court abused its discretion, relied on an erroneous legal standard, or relied on clearly erroneous findings of fact in entering the injunctive order being appealed. *See Miss Universe, Inc. v. Flesher,* 605 F.2d 1130, 1134 (9th Cir.1979).

All parties concur with the district court's conclusion that the first party to use an abandoned trademark in a commercially meaningful way after its abandonment, is entitled to exclusive ownership and use of that trademark and trade dress. Appellants argue, however, that the district court applied an erroneous legal standard in determining that June 28, 1982, the date on which Kingsford-Clorox intended the abandonment to become effective, was the date

that the abandonment actually occurred. Consumer Chemical argues that the trademark was abandoned as early as March 31, 1982 when Kingsford-Clorox wrote off the good will associated with the trademark for accounting purposes. Pine Mountain argues that abandonment was effective on June 26, 1982 when Kingsford-Clorox notified Pine Mountain of the impending abandonment. These arguments are not persuasive.

■ The district court's finding of abandonment was not made solely on the expression of intent of Kingsford-Clorox, but upon the totality of the circumstances including the express intent that abandonment be effective on June 28, 1982. All indications are that Kingsford-Clorox intended to continue use of the trademark through June 28, 1982, and maintained sufficient control over it until that date. For example, Kingsford-Clorox continued to negotiate a possible sale of the trademark almost until the moment abandonment was announced. Because Bolingbroke testified that Kingsford-Clorox intended to give up the trademark on June 28, because Kingsford-Clorox's attorneys filed notice of abandonment in the United States Patent and Trademark Office on June 28, and because Kingsford-Clorox published a formal announcement in the Wall Street Journal declaring abandonment as of June 28, the district court properly concluded that the abandonment was effective on that date.

Pine Mountain claims that even if abandonment occurred on June 28, 1982, it established the first post-abandonment use because its goods were then in commerce. Because this claim conflicts with the district court's finding that Pine Mountain's putative trademark use did not resume until June 29, 1982, we apply a clearly erroneous standard of review. Fed.R.Civ.P. 52(a). Pine Mountain's "use in commerce" was a June 28 shipment of firelogs sold on June 26; this sale was both premature and in bad faith. The district court resolved complicated factual issues in determining which parties established the first post-abandonment uses in the American, Canadian and European markets, and its findings are not clearly erroneous.

The district court neither abused its discretion, relied on erroneous legal standards, nor relied on erroneous findings of fact in holding that: (1) June 28, 1982 was the effective date of abandonment and (2) since California Cedar was the first to use the "Duraflame" trademark and trade dress after its abandonment, it was likely to prevail on the merits. Moreover, it is axiomatic that use by California Cedar's competitors, of a trademark to which it has exclusive rights, gives rise to the possibility that California Cedar will be irreparably injured.

### 2. Balance of Hardships

California Cedar has a major investment in Duraflame firelogs because it has a large inventory of such firelogs, and because Duraflame is the only brand of firelog proffered by California Cedar. California Cedar also has been the principal manufacturer of Duraflame firelogs since the initial introduction of the product bearing that trademark to the marketplace. In contrast, Pine Mountain and Consumer Chemical have only minor claims at stake, and both market their firelogs under a variety of trademarks. Under the circumstances, the balance of hardships tips sharply in California Cedar's favor.

The decision of the district court is affirmed.