Marion **KUSEK**, Plaintiff,

v.

The **FAMILY CIRCLE, INC.**, Defendant.

Civ. A. No. 94–30237 MAP.

United States District Court,
D. Massachusetts.

July 17, 1995.

---

Marion Kusek, Ludlow, MA, pro se.

Arthur F. Dionne, Philmore H. Colburn, II, Fishman, Dionne & Cantor, Windsor, CT, Adam Liptak, The New York Times Co., New York City, for defendant.

PONSOR, District Judge.

This recommendation is hereby adopted, upon *de novo* review. Counts I–VI are dismissed. Summary judgment is granted as to Count VII. The clerk will set a date for a case management conference before me on Count VIII.

So Ordered.

*REPORT AND RECOMMENDATION REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Docket No. 09) AND DEFENDANT'S MOTION TO DISMISS (Docket No. 25)*

NEIMAN, United States Magistrate Judge.

### I. INTRODUCTION

Plaintiff Marion Kusek alleged in her complaint that Defendant The Family Circle, Inc. ("Family Circle") infringed her rights to an unregistered trademark—"Speed Cooking." Kusek alleges that the infringement occurred in both the March 1990 and the September 1990 issues of *Family Circle* magazine published by Defendant. Family Circle denies Plaintiff's claims and filed a motion for summary judgment, asserting that the applicable statute of limitations bars Plaintiff's action as a matter of law.

Subsequent to Family Circle filing its motion, Plaintiff requested permission to amend her complaint (Docket 15). Permission was granted. In response, Family Circle filed a motion to dismiss under Rules 12(b)(6) and (f) of the Federal Rules of Civil Procedure, requesting that the Court dismiss all eight counts of Plaintiff's amended complaint for failure to state a claim upon which relief can be granted. In its motion, Family Circle also requested that the Court strike as redundant Counts Two, Four and Five of Plaintiff's amended complaint.

Both motions have been referred to the Court for a Report and Recommendation pursuant to Rule 3 of the Rules of the United States Magistrates and the United States District Court for the District of Massachusetts. 28 U.S.C.A. § 636(b)(1)(B). For the

reasons set forth below, the Court recommends partially granting Family Circle's motion to dismiss and denying Family Circle's motion for summary judgment.

## II. FACTUAL AND PROCEDURAL BACKGROUND [1]

Marion Kusek, a resident of Ludlow, Massachusetts, had developed and sold cookbooks since 1986 entitled "Cook One Hour—Eat All Week." The cookbooks' covers also contained the phrase "Speed Cooking" with a trademark ($^{TM}$) notation. The trademark was not registered.

On or about June 4, 1988, Plaintiff ordered an advertisement in the "Shopper's Gallery" of *Family Circle* magazine. Plaintiff also mailed copies of her cookbooks to Family Circle for prior advertisement approval. As indicated, the cookbooks contained the term Speed Cooking on its cover. However, neither the advertisement acknowledgment returned to Plaintiff nor the advertisement itself used the term Speed Cooking.

An employee at Family Circle who took Plaintiff's advertisement connected Plaintiff with the magazine's editorial department, knowing that the department wrote stories about entrepreneurs. The editorial department conducted a telephone interview with Plaintiff about her Speed Cooking system and indicated that a story about her might be considered. Between June of 1988 and February of 1990, Plaintiff sent several revised copies of her cookbook to Family Circle at their request. No story about Plaintiff materialized. However, the March 13, 1990 issue of *Family Circle* magazine, published on or about February 20, 1990, featured an article on Speed Cooking, both in the magazine and on the cover. The logo in the article incorporated not only the term Speed Cooking, but a picture of a timer and pot holder similar to that used on Plaintiff's cookbooks. No mention was made in the article about Plaintiff or her cooking system.

On or about February 27, 1990, Plaintiff wrote to Jacqueline Leo, Editor–In–Chief of *Family Circle*, expressing her concern with

the use of the Speed Cooking formula. By letter dated April 3, 1990, Ms. Leo wrote to Plaintiff indicating that Family Circle had researched the title Speed Cooking and that the "computer search organization did not reveal" Plaintiff's cookbook. Ms. Leo went on to indicate that Family Circle was always interested in other people's work and asked that Plaintiff send her a copy of the cookbook and tell her how many copies she had sold and through what channels.

An exchange of letters then ensued between Plaintiff and Family Circle and their respective attorneys. Since Plaintiff had retained and been advised by several attorneys, the correspondence varies among them. On July 25, 1990, Ms. Leo wrote to Plaintiff, acknowledged receipt of a sample copy of her cookbook, and repeated her reference to an earlier computer search for any commercial use of the term Speed Cooking. Ms. Leo indicated that Family Circle had "established a large audience already with speed cooking," which theme enabled them to sell "a great many copies" of the magazine. Ms. Leo also indicated that Family Circle had applied for registration of Speed Cooking as a trademark. She suggested that, to alleviate confusion, Plaintiff continue with the title of her book, "Cook One Hour—Eat All Week," while Family Circle would continue using the term Speed Cooking. See Exhibit 7 to Plaintiff's Arguments Opposing Defendant's Motion for Summary Judgment ("Plaintiff's Opposition") (Docket No. 14).

By letter dated August 6, 1990, Plaintiff's counsel ordered Family Circle to cease and desist from its use of the Speed Cooking trademark. Defendant's Memorandum in Support of Its Motion for Summary Judgment, Exhibit 5 ("Defendant's Memorandum") (Docket No. 11). Despite this letter, Speed Cooking was again featured in the September 25, 1990 issue of *Family Circle* magazine, published on or about September 4, 1990. In a letter dated November 12, 1990, Plaintiff was notified by Susan Sherry, Senior Editor at *Family Circle*, that the

---

**1.** The court recites the facts in the light most favorable to Plaintiff, since she is opposing the motion for summary judgment and the motion to dismiss. See *Woodman v. Haemonetics Corp.*, 51

F.3d 1087, 1089, n. 1 (1st Cir.1995), citing *Velez–Gomez v. SMA Life Assurance Co.*, 8 F.3d 873, 874 (1st Cir.1993).

magazine was no longer running profiles on beginning entrepreneurs and wished Plaintiff luck in her future endeavors.

By letter dated July 17, 1992, counsel for Plaintiff wrote to Family Circle claiming trademark infringement and unfair competition in violation of federal trademark law and Massachusetts General Laws Chapter 93A, the state's consumer protection law. Counsel also asserted that Family Circle had fraudulently obtained a trademark to Speed Cooking. Counsel gave Family Circle thirty days within which to answer. Defendant's Memorandum, Exhibit 6. By letter dated August 14, 1992, counsel for Family Circle denied any trademark infringement and claimed that Plaintiff's future use of Speed Cooking as a trademark would infringe on Family Circle's federally registered trademark. Counsel also indicated that Family Circle, for nominal consideration, would grant Plaintiff a license for her use of Speed Cooking as a trademark. Plaintiff's Opposition, Exhibit 6.

On July 2, 1993, attorneys for Family Circle again wrote to Plaintiff. It is unclear whether this was in response to a letter or telephone call. Defendant's counsel indicated that he had reviewed Plaintiff's trademark infringement claim in significant detail and asserted again that Family Circle had not violated Plaintiff's rights in any way. Defendant's counsel asserted, *inter alia,* that Family Circle had no knowledge of Speed Cooking prior to its March 19, 1990 issue, that Plaintiff had never spoken to anyone in an editorial capacity at Family Circle before the first use of Speed Cooking in the magazine, that no one at Family Circle involved in the decision to use Speed Cooking had any knowledge of Plaintiff's cookbook at that time, that the term Speed Cooking did not appear on the cover of Plaintiff's cookbook in any way that would allow it to acquire public recognition, and that, at the time Family Circle used Speed Cooking, Plaintiff owned no trademark rights in the term.

Further, Defendant's counsel asserted that even if Speed Cooking were to be considered a trademark, Family Circle's innocent use of the term would not support an award of money damages under federal trademark law

or Massachusetts state law. Despite all these claims, Counsel indicated that the term Speed Cooking was no longer of interest to Family Circle and, without admitting any liability or the truth of any of Plaintiff's allegations, stated that Family Circle was willing to settle the matter by surrendering its registration and leaving Plaintiff free to make whatever use of the term Speed Cooking she wished. Plaintiff's Opposition, Exhibit 8.

By letter dated August 4, 1993, Plaintiff informed counsel for Family Circle that she rejected his explication of the matter. Defendant's Memorandum, Exhibit 7. Attorneys for Family Circle magazine again denied any trademark infringement or monetary settlement in a letter dated September 24, 1993, and reiterated that Family Circle was willing to surrender its registration of the mark if a settlement could be finalized. Defendant's Memorandum, Exhibit 9. By letter dated November 1, 1993, Plaintiff rejected Family Circle's offer and indicated her intention to file a lawsuit if she did not hear from Family Circle within fourteen days. Defendant's Memorandum, Exhibit 8. The Plaintiff's letter went unanswered.

Plaintiff pursued a petition to cancel Family Circle's Speed Cooking trademark in the United States Patent and Trademark Office, in response to which Family Circle indicated, on June 27, 1994, that it had abandoned its trademark and was filing a request for voluntary cancellation. Plaintiff's Opposition, Exhibits 9 and 16. As a result, Plaintiff's petition to cancel Family Circle's trademark registration was granted on September 27, 1994. Plaintiff's Opposition, Exhibit 17. Plaintiff commenced this action on October 18, 1994.

### III. MOTION TO DISMISS

Family Circle filed a motion to dismiss after Plaintiff "added" six counts to her existing claims for trademark infringement and violation of Massachusetts General Laws, Chapter 93A. Family Circle is correct that Plaintiff's amended complaint sets forth her claims more completely than her original complaint, even though Plaintiff previously mentioned the substance of these new "claims" in her opposition to Family Circle's

motion for summary judgment. While Plaintiff's amended complaint enables the Court to more clearly address her claims, Plaintiff's new counts add nothing substantive to the original complaint.

Plaintiff's new claims continue to be grounded on the assertion that Family Circle used the Speed Cooking term without her permission. Her existing claims with regard to trademark infringement (Count Seven) and consumer protection under Chapter 93A (Count Eight) already incorporated her claims adequately. Plaintiff cannot convert her new claims into something they are not and thereby attempt to avoid the statute of limitations question with respect to Counts Seven and Eight. Accordingly, for the reasons set forth below, the Court recommends dismissal of Counts One through Six of Plaintiff's Amended Complaint, but not Counts Seven and Eight. The Court addresses the two surviving counts in the context of Family Circle's motion for summary judgment.

*A. MOTION TO DISMISS: STANDARD*

A motion to dismiss is designed to test the legal sufficiency of the complaint. "The Court's function on a Rule 12(b)(6) motion is not to weigh the evidence which might be presented at trial but merely to determine whether the complaint itself is legally sufficient." *Calero–Colon v. Betancourt–Lebron, et al.,* 1995 WL 35758 (D.Puerto Rico 1995), citing *Festa v. Local 3 International Brotherhood of Electrical Workers,* 905 F.2d 35, 37 (2d Cir.1990). A motion to dismiss requires the Court to accept "the factual averments contained in the complaint as true, indulging every reasonable inference helpful to the plaintiff's cause." *Garita Hotel Ltd. Partnership v. Ponce Fed. Bank, F.S.B.,* 958 F.2d 15, 17 (1st Cir.1992). See also *Pihl v. Massachusetts Dep't of Educ.,* 9 F.3d 184, 187 (1st Cir.1993). The First Circuit has stated that it will affirm a dismissal for failure to state a claim only if it appears, according to the facts alleged, that the claimant cannot recover on *any* viable theory. *Rumford Pharmacy, Inc. v. City of East Providence,* 970 F.2d 996, 998 (1st Cir.1992). However, "[d]espite the highly deferential reading which we accord a litigant's complaint under

Rule 12(b)(6), we need not credit bald assertions, periphrastic circumlocutions, unsubstantiated conclusions, or outright vituperation." *Correa–Martinez v. Arrillaga–Belendez,* 903 F.2d 49, 51, 52 (1st Cir.1990).

■ The Court must take special care when ruling on motions concerning the pleadings filed by pro se litigants, as in the situation here, as they are held to a less stringent standard than those drafted by lawyers. *Gonyer v. Franklin County Sheriff Fredrick McDonald,* 874 F.Supp. 464 (D.Mass.1995), citing *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972), *reh'g denied,* 405 U.S. 948, 92 S.Ct. 963, 30 L.Ed.2d 819 (1972), and *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976). When the Court looks to the allegations in a pro se litigant's complaint and "if under any theory they are sufficient to state a cause of action in accordance with the law, a motion to dismiss the complaint must be denied." *Gonyer,* 874 F.Supp. at 466, citing *Knight v. Mills,* 836 F.2d 659 (1st Cir.1987). This standard requires the Court to be especially indulgent in accepting the truth of the factual averments of the complaint and to consider every inference helpful to the plaintiff's cause.

*B. MOTION TO DISMISS: DISCUSSION*

Despite the required indulgence due Plaintiff as a pro se litigant, the Court can find no viable theory under which the pleadings are sufficient to create causes of action for Counts One (Breach of Contract), Two (Bad Faith), Three (Fraud and Deceit), Four (Unjust Enrichment), Five (Co-opt), and Six (Infringement–Copyright) of Plaintiff's Amended Complaint. Thus, the Court recommends that Counts One through Six be dismissed.

*1. Count One: Breach of Contract*

■ "The elements essential to pleading a breach of contract claim are: (1) the making of an agreement; (2) due performance by plaintiff; (3) breach thereof by defendant; and (4) causing damage to the plaintiff." *Stratton Group Ltd. v. Sprayregen,* 458 F.Supp. 1216, 1217 (S.D.N.Y.1978) (interpreting New York law). Even with due indul-

gence to Plaintiff's complaint, she fails to allege these elements. Nor does it appear that Plaintiff can provide that information to the Court. At best, her complaint simply describes her conversation with Defendant, in which the Defendant asked questions, gathered information, and used some but not all of the information gathered. See Amended Complaint, Count 1, paragraph 1. Such a conversation does not amount to the making of an agreement and the Defendant's failure to use all of the information provided does not amount to a breach. Further, Plaintiff fails to allege any damages from the alleged breach or the failure to publish the information provided. The damage she allegedly suffered arose from entirely different conduct, specifically Defendant's alleged trademark infringement.

In addition, the Court is reluctant to enforce vague, oral contracts where Defendant's First Amendment rights might be affected. If statutes requiring newspapers to publish specified political speech are unconstitutional, *Miami Herald Publishing Co. v. Tornillo*, 418 U.S. 241, 258, 94 S.Ct. 2831, 2839, 41 L.Ed.2d 730 (1974), alleged private contracts that would subject the media to damages for failure to publish information of lesser value also must be subjected to exacting scrutiny. The Eleventh Circuit rejected just such a claim. *Sellers v. American Broadcasting Co.*, 668 F.2d 1207, 1210 (11th Cir.1982) (declining to enforce agreement between source and journalist because "an essential element is vague, indefinite or incomplete"). See also *Nichols v. Fort Worth Star–Telegram*, 14 Media Law Reporter (BNA) 1543, 1544 (N.D.Tex.1987) (granting Rule 12(b)(6) motion in pro se case premised on newspaper's failure to print information supplied by plaintiff).

#### 2. Count Two: "Bad Faith"

The Court is not aware of the existence of such a cause of action. It appears to be a reformulation of the trademark infringement claim and/or the Chapter 93A claim.

#### 3. Count Three: Fraud and Deceit

■ The elements of fraud are representation of a material fact, falsity, scienter, justifiable reliance and damages. *Channel Master Corp. v. Aluminium Limited Sales, Inc.*, 4 N.Y.2d 403, 406–407, 151 N.E.2d 833, 834, 176 N.Y.S.2d 259, 262 (1958). Rule 9(b) of the Federal Rules of Civil Procedure requires that, with the exception of scienter, these elements are to be pleaded with particularity. Plaintiff has failed to comply with this requirement of specificity. While the representation alleged is Family Circle's trademark registration, and the falsity alleged is Family Circle's omission of Plaintiff's purported trademark, Plaintiff does not allege that she relied, justifiably or not, on this supposed misrepresentation. To the contrary, Plaintiff has maintained throughout the pendency of this action that she understood herself to be the owner of a valid trademark, despite Family Circle's statements. By Plaintiff's own account, no fraud was committed against her.

#### 4. Count Four: Unjust Enrichment

Count Four appears to be an attempt to re-plead the trademark infringement claim as an equitable claim: "The Defendants derive enrichment from using the term on the front cover of the magazine ..." See Amended Complaint, Count 4, paragraph 1. As such, this claim is redundant to Plaintiff's trademark infringement and Chapter 93A claims.

#### 5. Count Five: Co-opt

Plaintiff's claim of "co-opt" is not a legal theory with which the Court is familiar. Indulging her as a pro se litigant and reading this claim liberally in her favor, the claim may be said to allege trademark infringement: "[T]he Defendant took the Plaintiff's terms and ideas and used them for monetary gain." See Amended Complaint, Count 5, paragraph 1. Again, recasting the claim does nothing to alter the nature of the claim as one for trademark infringement and/or for consumer fraud. Accordingly, it is redundant under Rule 12(f).

#### 6. Count Six: Copyright Infringement

■ The Plaintiff fails to allege that she registered her work in the United States Copyright Office. Such registration is a pre-

requisite to suit for copyright infringement. See 17 U.S.C. § 411.

## IV. SUMMARY JUDGMENT

The Court addresses Plaintiff's two remaining counts, Count Seven (trademark infringement) and Count Eight (unfair and deceptive trade practices under M.G.L. Chapter 93A), in the context of Family Circle's motion for summary judgment.

## A. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where the record reveals no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). See *Mendes v. Medtronic, Inc.*, 18 F.3d 13, 15 (1st Cir.1994); and *Commercial Union Ins. v. Walbrook Ins. Co.*, 7 F.3d 1047, 1050 (1st Cir.1993), citing *Mesnick v. General Electric Co.*, 950 F.2d 816 (1st Cir.1991), *cert. denied*, 504 U.S. 985, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992). The facts must be viewed in the light most favorable to the non-moving party. *Commercial Union Ins. v. Walbrook*, 7 F.3d at 1050. The non-moving party bears the burden of placing at least one material fact into dispute after the moving party shows the absence of any disputed material fact. *Mendes v. Medtronic*, 18 F.3d 13, discussing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

A "genuine" issue is one that only a finder of fact can properly resolve because it may reasonably be resolved in favor of either party and a "material" issue is one that affects the outcome of the suit. *Collins v. Martella*, 17 F.3d 1, 3 n. 3 (1st Cir.1994), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–250, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). Mere allegations or conjecture unsupported in the record are insufficient to raise a genuine issue of material fact. *Horta v. Sullivan*, 4 F.3d 2, 11 (1st Cir.1993). Absent a genuine dispute of material fact, questions of law are appropriate for resolution on summary judgment. *Jimenez v. Peninsular & Oriental Steam Navigation Co.*, 974 F.2d 221, 223 (1st Cir.1992). Appellate review of summary judgment is plenary,

since the standard of review requires the trial court to make a legal determination rather than to engage in fact-finding. *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 48 (1st Cir.1990).

## B. DISCUSSION: SUMMARY JUDGMENT

For purposes of its motion for summary judgment, Family Circle admits to the use of the term Speed Cooking as alleged by Plaintiff, but denies that such use amounts to an infringement of Plaintiff's rights. Family Circle further asserts that its use of the term Speed Cooking ceased as of the publication of the September 25, 1990 issue of *Family Circle* magazine. Since Plaintiff filed the present action on October 18, 1994, four years and twenty-three days after the last alleged infringement, Family Circle asserts that Plaintiff's claims against it are barred by the applicable statute of limitations.

### 1. Statute of Limitations

The Lanham Act, 15 U.S.C. § 1125(a), which is the jurisdictional basis for Plaintiff's trademark infringement claim, does not contain a statute of limitations. When Congress does not include a statute of limitations in a federal statutory cause of action, the courts are to presume that Congress intended for an analogous state limitations period to apply. *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 356, 111 S.Ct. 2773, 2778, 115 L.Ed.2d 321, 331 *reh'g denied*, 501 U.S. 1277, 112 S.Ct. 27, 115 L.Ed.2d 1109 (1991). The Supreme Court explained that this rule of borrowing a state limitations period is founded on the Rules of Decision Act, 28 U.S.C. § 1652, which has been in existence long enough for courts to assume that Congress ordinarily intends by its silence that they borrow state law. *Id.*

Despite the general rule, there is a limited exception: if a state limitations period is at odds with the purpose of the federal law, the court should ignore the state limitations period and instead borrow the most analogous federal limitations period. *Del-Costello v. International Bd. of Teamsters,*

462 U.S. 151, 161, 103 S.Ct. 2281, 2289, 76 L.Ed.2d 476 (1983). This exception, however, is "closely circumscribed" and tends to succumb to the general rule that state rather than federal limitations periods apply when Congress does not specify a limitations period for a federal statutory cause of action. *Lampf,* 501 U.S. at 356, 111 S.Ct. at 2778, 115 L.Ed.2d at 331–32, quoting *Reed v. United Transportation Union,* 488 U.S. 319, 324, 109 S.Ct. 621, 625, 102 L.Ed.2d 665 (1989). See also *North Star Steel Company v. Thomas,* — U.S. —, 115 S.Ct. 1927, 132 L.Ed.2d 27 (1995) and *Derwin v. General Dynamics Corporation,* 719 F.2d 484, 487 (1st Cir.1983).

■ The general rule requiring the application of an analogous state statute of limitations applies in the Lanham Act context. See *Fox Chemical Co. v. Amsoil, Inc.,* 445 F.Supp. 1355, 1357–58 (D.C.Minn., 1978); *Construction Technology, Inc. v. The Lockformer Co.,* 704 F.Supp. 1212, 1221 (S.D.N.Y., 1989); and *Unlimited Screw Products, Inc. v. Malm,* 781 F.Supp. 1121, 1126 (E.D.Va. 1991). Family Circle asserts that the statute of limitations applicable in the instant case, whether one borrows from New York or Massachusetts law, is three years. New York was Family Circle's principal place of business and the site of the alleged infringement. Massachusetts is Plaintiff's residence, the site of the present litigation and, arguably, the site of the alleged infringement.

■ With reference to the laws of the State of New York, the appropriate statute of limitations in a trademark infringement or unfair competition action, under both state and federal law, is three years. C.P.L.R. § 214(4). See *Lorenzo De Medici v. Lorenzo De Medici, Inc.,* 101 A.D.2d 719, 475 N.Y.S.2d 391, 392–93 (A.D. 1st Dept.1984); see also *Construction Technology, Inc., supra.* Further, trademark infringement is considered a continuing tort in New York, unless the alleged infringer ceases use of the contested mark. *Valmor Products Co. v. Standard Products Corp.,* 464 F.2d 200 (1st Cir.1972).

■ While the matter is somewhat more complex if the laws of the Commonwealth of Massachusetts are controlling, the result is the same. In the case of trademark infringement under the Lanham Act, § 43(a), 15 U.S.C. § 1125(a), the analogous Massachusetts state statute is M.G.L. ch. 260, § 2A, which provides for a statute of limitations of three years for tort, contract to recover personal injury, and replevin actions. However, since Plaintiff's action also sounds in unfair competition, which is governed by the Massachusetts Consumer Protection Act, M.G.L. ch. 93A, the applicable statute of limitations is four years. See M.G.L. ch. 260, § 5A. In fact, it appears that a Chapter 93A demand letter was sent to Family Circle by Plaintiff's attorney on July 17, 1992. Defendant's Memorandum, Exhibit 6. The applicability of the statute of limitations of M.G.L. ch. 260, § 5A to M.G.L. ch. 93A is shown in *Prescott v. Morton International, Inc.* 769 F.Supp. 404 (D.Mass.1990).

Family Circle asserts that Plaintiff's claims are simply too late, regardless of how they are characterized. Applying a three year statute of limitations to the September 25, 1990 issue of *Family Circle,* Plaintiff's complaint was filed one year and twenty-three days too late and, applying a four year statute of limitations, twenty-three days too late. In response, Plaintiff does not contest the applicability of either the three or four year statute of limitations. Rather, she makes two arguments: first, that the statute of limitations should be tolled in accord with the doctrine of equitable tolling, and second, that the last "use" and therefore infringement of the trademark by Family Circle came *after* the September 25, 1990 issue, either of which argument enables Plaintiff to fall within the appropriate statute of limitations.

### 2. Tolling Statute of Limitations

■ The decision whether to equitably toll a statute of limitations is left to the sound discretion of the Court. *Kregos v. The Associated Press,* 3 F.3d 656 (2d Cir.1993), *cert. denied,* — U.S. —, 114 S.Ct. 1056, 127 L.Ed.2d 376 (1994). See also *Banner Indus. v. Central States Pension Fund,* 875 F.2d 1285, 1294 (7th Cir.1989), *cert. denied,* 493 U.S. 1003, 110 S.Ct. 563, 107 L.Ed.2d 558 (1989); and *Ohio v. Peterson, Lowry, Rall,*

*Barber & Ross,* 651 F.2d 687, 693–94 (10th Cir.1981), *cert. denied,* 454 U.S. 895, 102 S.Ct. 392, 70 L.Ed.2d 209 (1981). "[W]here the claimant [fails] to exercise due diligence in preserving [her] legal rights, courts are reluctant to apply principles of equitable tolling to extend a federal limitation." *de Casenave v. United States,* 991 F.2d 11, 13 (1st Cir.1993), citing *Irwin v. Veterans Affairs,* 498 U.S. 89, 96, 111 S.Ct. 453, 458, 112 L.Ed.2d 435 (1990) *reh'g denied,* 498 U.S. 1075, 111 S.Ct. 805, 112 L.Ed.2d 865 (1991). Indeed, courts have extended equitable tolling relief only sparingly. *Irwin v. Veterans Affairs,* 498 U.S. at 96, 111 S.Ct. at 458. Equitable tolling only applies (i) where a claimant has actively pursued judicial remedies by filing a pleading, although defective, during the statutory period, or (ii) "where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Id.* at 96, 111 S.Ct. at 458.

 Even when the Court takes the factual averments in Plaintiff's complaint and affidavits as true and indulges every inference in her favor, equitable tolling has no place in this action. First, Plaintiff did not file a pleading, let alone a defective one, within the applicable time period. Second, Plaintiff's assertion that Family Circle's settlement negotiations were designed to "string her along" are not borne out by the facts—Plaintiff was aware of the alleged infringement since at least March of 1990. In fact, Plaintiff threatened Family Circle with litigation, either directly or by counsel, on a number of occasions. Plaintiff simply misconstrues the correspondence.

Family Circle's responses, whether directly or through counsel, never entailed the kind of inducement or trickery which might convince this Court to apply the principles of equitable tolling under the narrow circumstances allowed. Compare *Glus v. Brooklyn Eastern Dist. Terminal,* 359 U.S. 231, 79 S.Ct. 760, 3 L.Ed.2d 770 (1959) (adversary's misrepresentation caused plaintiff to believe that he could begin his action at any time within seven years after it accrued, thereby causing plaintiff to let filing period lapse). See also *Holmberg v. Armbrecht,* 327 U.S.

392, 66 S.Ct. 582, 90 L.Ed. 743 (1946). Thus, Plaintiff's "reliance" on Family Circle's offers of settlement, even if true, was unreasonable in this case. See *Kregos v. The Associated Press,* 3 F.3d at 661 (relying on the legal opinion of another's attorney is unreasonable when both parties are aware adverse interests are being pursued); *Royal American Managers, Inc. v. IRC Holding Corp.,* 885 F.2d 1011, 1016 (2d Cir.1989) (unreasonable to rely on adversary's interpretation of statute); and *M.W.S. Wire Indus. v. California Fine Wire Co.,* 797 F.2d 799, 802–803 (9th Cir.1986) (plaintiffs' reliance on adversary's representation of strength of the legal claim in reaching settlement agreement not grounds to rescind settlement contract). As a result, assuming that the last use of the trademark by Family Circle was September 25, 1990, Plaintiff is not able to come within the statute of limitations. Equitable tolling does not apply.

### 3. Last "Use" of Trademark

Federal trademark rights are created by actual "use" of the mark in commerce. 15 U.S.C. § 1051. Concomitantly, infringement of a federal trademark right is defined as the unauthorized "use in commerce" of any reproduction, counterfeit, copy or colorable imitation of a registered mark on goods or services, 15 U.S.C. § 1114(1)(a) and (b), and/or "use in commerce" of any word, term, or false designation of origin, false or misleading description of fact or false or misleading representation of fact, which is likely to cause confusion. 15 U.S.C. § 1125(a). As defined in the Lanham Act, "use in commerce" means the following:

> the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark . . . A mark shall be deemed to be in use in commerce
> (1) on goods when—
>> (A) it is placed in any manner on the goods . . . and
>> (B) the goods are sold or transported in commerce . . .

15 U.S.C. § 1127.

#### a. Trademark Registration As "Use"

 Plaintiff contends that the United States Patent and Trademark Office's cita-

532

tion of Family Circle's trademark registration in Plaintiff's trademark cancellation proceeding against Family Circle amounts to a "use" of the trademark. First, while federal registration gives the owner of a mark legal rights and benefits, its mere registration does not create the mark nor amount to "use" of the mark. See *Keebler Co. v. Rovira Biscuit Corp.*, 624 F.2d 366, 372 (1st Cir. 1980); and *Haviland & Co. v. Johann Haviland China Corp.*, 269 F.Supp. 928, 954 (S.D.N.Y.1967). Second, since Family Circle's trademark registration *per se* cannot be considered as a use in commerce, there can be no continuing tort associated with either its mere existence or its citation by the U.S. Patent and Trademark Office in a cancellation proceeding.

### b. Back Issues As "Use"

■ Plaintiff asserts that the availability to the public of back issues of both the March and the September 1990 issues of *Family Circle* magazine amounts to ongoing "use in commerce" under the Lanham Act. Since current issues of *Family Circle* magazine indicate that back issues may be obtained "if available," (see Plaintiff's Motion for Leave to File Supplemental Material, Exhibit 2C (Docket No. 27)), Plaintiff argues that her complaint would be timely measured against any applicable statute of limitations.

As evidence of the actual availability of the March and September 1990 back issues, Plaintiff submitted the affidavit of Paul R. Harrington which indicates that he requested copies of those issues on or about December 1, 1994. Mr. Harrington states that he was advised by a representative of *Family Circle* magazine that those back issues were in fact available. Mr. Harrington's affidavit further states that on or about December 6, 1994, he requested the back issues in writing and that on or about December 30, 1994, he received a large envelope from G & J USA Publishing Company.

Family Circle asserts that Mr. Harrington's affidavit is irrelevant to the issue of its alleged continuing use of the term Speed Cooking for two reasons. First, Mr. Harrington has failed to identify what he actually received from G & J USA Publishing. For purposes of this motion, the Court will assume, as implied, that Mr. Harrington did in fact receive the two issues in which Speed Cooking was featured. Second, Family Circle asserts that, regardless of what Mr. Harrington received, he did not receive it from Family Circle but from G & J USA Publishing. Family Circle disclaims any connection to G & J USA Publishers.

Family Circle attests to the fact that The Family Circle, Inc. is an Iowa corporation and a subsidiary of the New York Times Company. The New York Times Company sold certain assets, including *Family Circle* magazine, to Gruner and Jahr Printing and Publishing Company, a Delaware general partnership. G & J USA Publishing is a division of Gruner and Jahr Printing, and neither Gruner and Jahr Printing nor its publishing division is related to, affiliated with, or controlled in any way by the Defendant in this case. Consequently, Family Circle argues that if G & J USA Publishing sent back issues of *Family Circle* magazine to Mr. Harrington, said action was not taken by Family Circle and cannot be considered an infringement by Family Circle of Plaintiff's alleged trademark rights. Family Circle further asserts that Plaintiff was fully aware of the fact that G & J USA Publishing was the new owner of *Family Circle* magazine at least as early as August 29, 1994, before Mr. Harrington sought the back issues. See Plaintiff's Opposition, Exhibit 18, ¶ 14.

The Court need not address whether Family Circle itself had some role to play in the availability of back issues. Rather, the Court has determined that such availability, indeed the actual production of back issues, does not amount to "use" within the meaning of the Lanham Act. Even if the March and September 1990 back issues of *Family Circle* magazine were made available as Plaintiff asserts, such availability is so incidental as to fall short of a "use" which this Court could deem infringing. The production of a magazine back issue is no more a "use" than the availability of that back issue in a library. If such "use" was deemed sufficient to create claims of infringement, libraries, newspapers and magazine publishers would have to cleanse their stock of back issues in which

possibly infringing articles might appear. The Lanham Act does not contemplate such a result.

It is within the realm of trademark *abandonment* that the question of *use*, as posed here, more frequently arises under the Lanham Act. Under the Lanham Act, a trademark is deemed "abandoned" when either (i) its use has been specifically discontinued, with intent not to resume such use, or (ii) when any course of conduct, including acts of omission as well as commission, causes the mark to lose its significance. 15 U.S.C. § 1127. Family Circle's non-use of the Speed Cooking trademark falls under the first criterion. Under that criterion, abandonment may be found based on two factors: (1) discontinuance of use, or non-use, and (2) an intent not to resume use. The Lanham Act allows the element of intent to be inferred from circumstances. For example, two consecutive years of non-use are considered *prima facie* abandonment.

Other than the question of back issues, the facts indicate beyond dispute that Defendant completely stopped its use of Speed Cooking after publication of its September 1990 issue. After that issue, Family Circle discontinued its use of the trademark and later specifically abandoned its trademark registration. See *California Cedar Products Co. v. Pine Mountain Corp.*, 724 F.2d 827 (9th Cir.1984) (trademark owner deemed to have stopped using its mark; effective on date it published a newspaper notice and filed abandonment documents in the United States Patent and Trademark Office).

■ Family Circle's inconsequential use of the trademark Speed Cooking, were it making back issues available, cannot forestall abandonment. "To prove bona fide usage, the proponent of the trademark must demonstrate that use of the mark has been deliberate and continuous, not sporadic, casual or transitory." *La Societe Anonyme des Parfums Le Galion v. Jean Patou, Inc.*, 495 F.2d 1265, 1271–1272 (2d Cir.1974), citing 3 Callmann, Unfair Competition, Trademark & Monopolies 76.2(d), 1969 (where *no present intent is found to market the trademarked product, minimal sales are insufficient to establish trademark rights*). See also *Sodima*

*v. International Yogurt*, 662 F.Supp. 839, 849 (D.Or.1987). In essence, nominal or residual use is not sufficient to avoid abandonment. See *Hiland Potato Chip Company v. Culbro Snack Foods, Inc.*, 720 F.2d 981, 984 (8th Cir.1983) (resale of returned potato chips not sufficient use to avoid abandonment). Minimal use of a mark, which use is not part of an "ongoing program to exploit the mark" is insufficient to vest a party with trademark rights. *Anvil Brand, Inc. v. Consolidated Foods Corp.*, 464 F.Supp. 474, 481 (S.D.N.Y. 1978), citing *La Societe Anonyme des Parfumes Le Galion v. Jean Patou, Inc., supra.*

The availability of back magazine issues is indistinguishable from such nominal, inconsequential uses. In fact, if the situation were reversed, and Family Circle was trying to prevent Plaintiff from interfering with *its* Speed Cooking trademark, Family Circle would have difficulty proving that its production of back issues would forestall the abandonment of its trademark. If inconsequential use cannot forestall abandonment, where the user is *contesting* abandonment, inconsequential use can hardly amount to use when the user *concedes* abandonment, as here. Plaintiff should not be able to impose a "use" on Family Circle in the circumstances of this action. Accordingly, the time within which Plaintiff was required to file her complaint does not have a new starting date.

### c. Publication As "Use"

■ The Court is more troubled by the *actual* date of the last use of the Speed Cooking trademark by Family Circle with reference to its publication of the September 25, 1990 issue. Family Circle's pursuit of summary judgment is entirely dependent on its assertion that the infringement of Plaintiff's trademark, if any, last occurred in the September 1990 issue. Family Circle asserts that its use of the term Speed Cooking ceased as of the publication date of that issue, September 4, 1990. In an affidavit, the editor-in-chief of the magazine asserts that the issue was "removed from publication on or about September 25, 1990."

Conceding that Family Circle has not published, printed, used or employed the term

**534**

Speed Cooking in any fashion since that issue of *Family Circle* magazine, the Court still believes that there is a genuine and material issue of fact with regard to the actual date of last use. Plaintiff claims, in essence, that the "shelf life" of the September 1990 issue would be of a sufficient duration for her to fall at least within the four-year statute of limitations for her Chapter 93A claim. Given the burden which Family Circle must meet in pursuing its motion for summary judgment, the Court agrees.

In order to prevail on its motion for summary judgment, Family Circle must do more than merely assert that its September issue was removed from publication on or about September 25, 1990. Unless Family Circle can demonstrate that the September 25, 1990 issues of its magazine were uniformly removed from the shelves and unavailable to the public at least four years and one day prior to October 18, 1994, the date Plaintiff filed this action, the Court will assume that the magazine was available within at least four years of the complaint. Plaintiff should be able to proceed on her Chapter 93A claim, as that Count falls within the applicable limitations period.

## V. CONCLUSION

For the reasons stated, the Court recommends that Defendant's Motion to Dismiss be granted with respect to Counts One through Six of Plaintiff's Amended Complaint and denied with respect to Counts Seven and Eight. Because of the Court's recommendation, it is not necessary to address Defendant's motion under Rule 12(f) to strike Counts Two, Four and Five. The Court also recommends that Defendant's Motion for Summary Judgment be denied on Count Eight of Plaintiff's Amended Com-

plaint (Chapter 93A), but granted on Count Seven (trademark infringement).[2]

DATED: June 28, 1995.

---

2. The parties are advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court **within ten (10) days** of the party's receipt of this Report and Recommendation. The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection. The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation. *See U.S. v. Valencia–Copete,* 792 F.2d 4, 6 (1st Cir. 1986); *U.S. v. Vega,* 678 F.2d 376, 379 (1st Cir.1982). *See also Thomas v. Arn,* 474 U.S. 140, 154–55, 106 S.Ct. 466, 474, 88 L.Ed.2d 435 (1985) *reh'g denied,* 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986).