**WOMEN GOLFER, INC., Plaintiff,**

v.

**MEREDITH CORP. and Golf for Women, Defendants.**

**No. 90 Civ. 2081 (KTD).**

United States District Court, S.D. New York.

March 6, 1992.

DeStefano, Gottlieb & Gabor, New York City (Samuel J. Gottlieb, of counsel), for plaintiff.

Davis & Gilbert, New York City (Patricia Hatry, of counsel), for defendants.

1. In conformance with Local Civil Rule 3(g), defendants submitted a statement of those material facts as to which there is no genuine triable issue. Plaintiff did not submit a Rule 3(g) Statement in opposition. Thus, the material facts set forth in defendants' Rule 3(g) Statement are deemed admitted.

## MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge:

On March 27, 1990, plaintiff Woman Golfer, Inc. commenced this diversity action against defendants Meredith Corp. and Golf for Women, alleging misappropriation of an idea, breach of implied contract in fact, fraud, and quasi-contract. Defendants now move for summary judgment, pursuant to Fed.R.Civ.P. 56.[1]

■ Sometime prior to March, 1989, Tom O'Keefe and Brendan J. Kelly[2] decided to fill a void they perceived in the consumer magazine market. Their idea was to promote a magazine, *Woman Golfer*, targeted solely at women golfers. Prior to March, 1989, O'Keefe and Kelly performed market studies to determine the feasibility of their idea, and drew up a business plan which included: (1) proposals on editorial format and content; (2) five-year projections (as to production and finances); and, (3) strategies for advertising, circulation and staffing. After reducing their plan to writing, O'Keefe and Kelly presented the proposal and written plan to various publishing entities. *See* Compl. at ¶¶ 7–9; *see also* Boersma Aff. at Exh. A; O'Keefe Aff. at Exh. A.

On April 13, 1989, O'Keefe and Kelly met, for the first and only time, with Burton H. Boersma, Senior Vice President/Publishing Director of the Magazine Group of the Meredith Corporation. Kelly Aff. at ¶ 3; *see also* Boersma Aff. at 1. During that meeting, Kelly and O'Keefe presented their proposal to Boersma, and gave him the written plan for Meredith to consider. Defendants' Statement Pursuant to Local Rule 3(g) at ¶ 4. According to plaintiff, Boersma inquired whether the proposed magazine might compete with any magazines in the existing market. Compl. at ¶ 10. Kelly told him that he and

2. Tom O'Keefe and Brendan J. Kelly are the sole shareholders of Woman Golfer, Inc. Complaint at ¶ 5. In addition, O'Keefe is the President, and Kelly the Vice–President, of Women Golfer, Inc. Kelly Affidavit at ¶ 1; O'Keefe Aff. at ¶ 1. Woman Golfer, Inc. was incorporated on August 21, 1989, sometime after the events giving rise to this litigation. Boersma Aff. at 2, Exh. B.

O'Keefe knew about, but had never seen a copy of, *GFW*—"an undercapitalized magazine with a very small subscription base and no national advertising."[3] Kelly Aff. at ¶ 3; O'Keefe Aff. at ¶ 12. Kelly and O'Keefe advised Boersma that *GFW* would pose absolutely no threat to the proposed magazine. Boersma was enthusiastic about the proposal, and asked Kelly to call him when Kelly obtained a copy of *GFW*.[4] A few days later, Boersma called Kelly to tell him that he had received a copy of *GFW* from his own sources, that he found the magazine "very weak," and that he did not believe that it would pose any threat to *Woman Golfer*, as proposed. Kelly Aff. at ¶ 4.

Boersma admits that the April 13 meeting piqued his interest in the proposal and that he passed the idea on to his associates at Meredith for their analysis. After he and his Meredith associates became aware of *GFW*, however, Meredith looked into purchasing that magazine. Boersma Aff. at 2–3. By letter of June 2, 1989, Boersma contacted the publishers of *GFW*, Woody and Debra Brumitt, and expressed interest in their magazine. Kelly Aff. at Exh. B. Meredith subsequently purchased, and is now publishing, *GFW* under the name *Golf for Women*. Defendants' Statement Pursuant to Local Rule 3(g) at ¶ 11; Boersma Amended Reply Aff. at 2. On or prior to June 8, 1989, Boersma informed Kelly and O'Keefe that Meredith had no interest in their proposal. Boersma Aff. at 3; Kelly Aff. at ¶ 7, Exh. C.

## DISCUSSION

The entry of summary judgment is mandated against a party who, after adequate discovery and upon motion, fails to establish the existence of an element essential to its case, and on which it will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The nonmoving party cannot rely simply on its allegations. Rather, it "'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (quoting Fed.R.Civ.P. 56(e)). Plaintiff simply has not met its burden under the prevailing case law.

Plaintiff's causes of action are all premised on plaintiff having a valid property right in its idea. A property right in an idea derives from its novelty and originali-

---

[3] The written plan given to Boersma did not mention *GFW* or any existing magazine targeting women golfers. However, at least three other such magazines had previously been published in the United States. Boersma Aff. at 3, Exhs. A, E, F, G; Defendants' Statement Pursuant to Local Rule 3(g) at ¶¶ 5, 7–8.

Boersma maintains that he personally had no knowledge of *GFW* (the correct name of which, he states, is *Golf for Women*) until May 10, 1989. On that date, some one in Meredith's magazine development department gave him a copy of the magazine and informed him that it had been published regularly since July/August, 1988. Boersma Aff. at 2; Boersma Amended Reply Aff. at 2. Meredith had known of the magazine at least since June 10, 1988, when a professor at the University of Mississippi sent John Thomas at Meredith a copy of *GFW*, which was developed and published by some of the professor's ex-students. Apparently, Meredith provides funding to the Service Journalism Department at the university. Thomas thereafter sent a note of congratulations to Woody and Debra Brumitt. Boersma Amended Reply Aff. at 2, Exhs. 1, 2; *see also* Boersma Aff. at 2, Exh. D.

Defendants' Rule 3(g) Statement makes no assertion as to when Boersma first found out about *GFW*. Therefore, for the purposes of this motion, I will assume plaintiff's version of the events to be true.

[4] The parties did not enter into a written agreement at this time. Defendants' Statement Pursuant to Local Rule 3(g) at ¶ 9. In fact, Women Golfer, Inc. was not yet incorporated. *See* Note 2, *supra.* There is some disagreement, however, over whether the parties addressed the issue of compensation. Boersma claims the issue was never discussed. Boersma Aff. at 3. His Amended Reply Affidavit quotes a portion of O'Keefe's deposition where O'Keefe apparently agrees with this contention. Boersma Amended Reply Aff. at 4. Kelly asserts, however, that "we made it very clear [at the April 13 meeting that] we expected to be compensated.... I told him in great detail what we were expecting...." Kelly Aff. at ¶ 5.

Apparently, the matter of confidentiality was never discussed and no written confidentiality agreement ever signed. Boersma Aff. at 3. Plaintiff asserts, however, that the standard practice in the publishing industry is to treat all proposals as confidential. O'Keefe Aff. at ¶ 18.

ty. *See Downey v. General Foods*, 31 N.Y.2d 56, 334 N.Y.S.2d 874, 286 N.E.2d 257 (1972) (under New York law, lack of novelty in an idea fatal to any cause of action for unauthorized use of that idea); *see also Murray v. National Broadcasting Co.*, 844 F.2d 988 (2d Cir.) (accepting *Downey*), *cert. denied*, 488 U.S. 955, 109 S.Ct. 391, 102 L.Ed.2d 380 (1988); *Ring v. Estee Lauder, Inc.*, 702 F.Supp. 76, 77 (S.D.N.Y. 1988), *aff'd*, 874 F.2d 109 (1989). Thus, each cause of action must be dismissed unless plaintiff can establish a genuine issue as to the novelty and originality of its idea.

A plaintiff cannot rest on mere assertions of novelty and originality. He must demonstrate some basis in fact for those claims. Plaintiff recognizes, as it must from the evidence, that there is nothing novel or original in the idea of a woman's golf magazine. At least three other magazines targeting women golfers had previously been published in the United States. Instead, plaintiff argues that the originality of its idea lies in the unique combination of elements comprising its business plan: "[w]e did not create a plan simply for a women's golf magazine. Rather, we drew upon our collective experience in advertising and publishing to devise a business plan for a successful magazine." O'Keefe Aff. at ¶ 6.

Plaintiff's affidavits in opposition, however, do nothing to substantiate its claims of novelty and originality in the idea presented to defendants. Nor have they demonstrated that defendants used their idea in any way. Each argument proffered is controverted by the facts, or by common sense. For example, plaintiff states "we proposed a controlled circulation of 200,000 subscribers [5].... directed toward women aged 25 to 50, with an above-average income." O'Keefe Aff. at ¶ 8. However, *Golf for Women* "rather than a controlled circulation magazine, was and is an entirely paid circulation magazine including subscribers and newsstand." Boersma Amended Reply Aff. at 3. Further, the suggestion that there is something novel or original in the idea of targeting a women's golf magazine to women aged 25 to 50 with above-average incomes borders on the ludicrous.

Plaintiff next claims that its business plan "refined the editorial content to address other issues which were of importance to women, such as health and beauty tips, vacation and travel." O'Keefe Aff. at ¶ 9. However, it offers neither specific evidence that such suggestions were novel or original nor evidence that defendants incorporated any of these general editorial suggestions into *Golf for Women.*

Plaintiff further claims that it determined "that the best avenue of success for the magazine would lie in approaching publishers which already published other successful women's magazines." O'Keefe Aff. at ¶ 10. I find nothing novel or original in the suggestion that the publisher of a new magazine would benefit from an existing advertising base. This seems nothing more than business common sense.

■ In short, plaintiff does not establish the requisite elements of novelty and originality in its idea and, thus, fails to satisfy its burden of demonstrating a property interest in the idea. Since all of plaintiff's claims (misappropriation, breach of implied contract, fraud, quasi-contract) are based on a claim of a property interest, they must be dismissed.[6] *See Murray v. National*

---

**5.** "Controlled circulation" is "the practice of targeting [a] magazine and indeed limiting the initial subscription efforts to a selected market based on demographics factors." O'Keefe Aff. at ¶ 8.

**6.** Plaintiff's misappropriation claim must be dismissed for the additional reason that plaintiff has failed to make a sufficient showing that defendants utilized its idea.

A plaintiff cannot recover for misappropriation absent a showing that its novel and original ideas were actually used by the defendant. *See Granoff v. Merrill Lynch & Co.*, 775 F.Supp. 621, 627, 630 (S.D.N.Y.1991); *McGhan v. Ebersol,* 608 F.Supp. 277, 286 (S.D.N.Y.1985). Plaintiff cannot simply stand on its allegation that "Meredith incorporated numerous ideas which were directly lifted from plaintiff's confidential business plan." Compl. at ¶ 18. Plaintiff must present some basis in fact for its assertions. *Granoff v. Merrill Lynch & Co.*, 775 F.Supp. at 627, 630 (granting summary judgment where, *inter alia,* no genuine issue of material fact as to

*Broadcasting Co.,* 844 F.2d 988 (affirming dismissal of claims for breach of implied contract, misappropriation, conversion, unjust enrichment and fraud where novelty not established); *Granoff v. Merrill Lynch & Co.,* 775 F.Supp. 621 (granting defendants' motion for summary judgment on claims for misappropriation, breach of contract and fraud where novelty not demonstrated); *Ring v. Estee Lauder,* 702 F.Supp. 76 (same, as to claims for unjust enrichment, fraud and misappropriation); *Downey v. General Foods Corp.,* 31 N.Y.2d 56, 334 N.Y.S.2d 874, 286 N.E.2d 257 (same, as to claims for misappropriation, breach of express contract, breach of implied contract and unjust enrichment).

For the reasons stated above, defendants' motion for summary judgment dismissing the complaint is granted in its entirety.

SO ORDERED.

lack of use by defendant); *McGhan v. Ebersol,* 608 F.Supp. at 286. Plaintiff attempts to show misappropriation by calling attention to the fact that the newspaper article announcing Meredith's acquisition of *Golf for Women* stated that the magazine would have a circulation base rate of 200,000. O'Keefe Aff. at ¶ 16, Exh. D. Plaintiff implies, but has not demonstrated, that this figure was lifted from its business plan. Even if it were, plaintiff offers no evidence that this circulation base rate was novel or original.