Craig P. NADEL, Plaintiff,

v.

**PLAY BY PLAY TOYS & NOVELTIES, INC., Defendant.**

**No. 97 Civ. 9368(SHS).**

United States District Court, S.D. New York.

Jan. 21, 1999.

Catriona Collins, New York, NY, for plaintiff.

Frank J. Colucci, New York, NY, for defendant.

## OPINION

STEIN, District Judge.

This action for breach of contract and unfair competition arises out of the development of "Tornado Taz," a children's toy based on the "Tazmanian Devil" cartoon character, by defendant Play By Play Toys & Novelties, Inc. Presently before the Court is Play By Play's motion for summary judgment dismissing the complaint pursuant to Fed.R.Civ.P. 56(b) and plaintiff Craig P. Nadel's motion for summary judgment dismissing Play By Play's counterclaims for violations of the Lanham Act, unfair competition, deceptive trade practices, false advertising, injury to business reputation, and tortious interference with prospective business relations. For the reasons set forth below, both motions for summary judgment are granted.

## BACKGROUND

Play By Play is engaged in the design, development, marketing, and sale of toys and other novelty products. In June of 1996, Play By Play acquired the Ace Novelty Co. Inc., which had been selling plush toys based on characters from the "Looney Tunes" cartoons, including the "Tazmanian Devil," under license from Warner Bros. (Deposition transcript of Mark Gawlik, July 1, 1998, at 17–18). Ace Novelty's Tazmanian Devil toy did not move and was designed to be standing. (Id.).

Nadel is an originator of new toy ideas. Plaintiff claims, and for the purposes of defendant's motion the Court accepts as true, that he met with Neil Wasserman, an executive from Play By Play, in October 1996. At this meeting, plaintiff presented to Wasserman samples of his new product concepts, including a sample of a "vibrating, spinning, screaming monkey." (Deposition transcript of Craig Nadel, July 7–8, 1998 ("Nadel Dep.") at 239). Nadel had created this sample by inserting a vibration mechanism from a commercially available Halloween toy into a commercially available plush monkey. (Id. at 203–05, 293–94, 297–98).

According to Nadel, Wasserman indicated that he was interested in using the "vibrating, spinning, screaming" concept in a toy based on the Tazmanian Devil character and asked Nadel to aid him in developing such a toy. (Id. at 241–43). Specifically, Nadel claims that Wasserman promised to send him an audio compact disk with the voice of the Tazmanian Devil and a Tazmanian Devil "skin" into which Nadel could insert a mechanism to make the toy vibrate and spin. Plaintiff further claims that, although he provided Wasserman with a sample of his "vibrating, spinning, screaming" monkey and stopped by Play By Play's offices "numerous" times to retrieve the promised Tazmanian Devil skin and audio disk, Wasserman never supplied him with the promised items. (Id. at 242–44, 261).

At the New York Toy Fair in February 1997, which was four months after Nadel's initial meeting with Wasserman, Play By Play introduced "Tornado Taz" to the toy trade. Tornado Taz is a plush toy in the form of the Tazmanian Devil character which, when squeezed, spins around, vibrates, and says "Me, Tazmanian Devil" followed by a "snarling and grunting" sound. (Tornado Taz is Exh. A to the Declaration of Celine Jimenez Crowson dated September 14, 1998 ("Crowson Decl.")).

Simply put, Nadel claims that Play By Play stole his idea of a vibrating and spinning soft toy that makes sounds. The parties do not dispute that Tornado Taz fits the description of a soft toy which contains an internal vibration mechanism that causes the toy to spin around when placed on a flat surface and make a sound described as "screaming," "laughing," "snarling," or "grunting." Play By Play, however, contends that it, and not Nadel, developed the concept for Tornado Taz. In addition, Play

By Play claims that even if it did use Nadel's idea in developing Tornado Taz, Nadel is not entitled to any compensation because Nadel's concept was not novel. In support of its argument, Play By Play has submitted evidence of various toys that it alleges contain the very characteristics Nadel claims as his concept.

Play By Play further alleges that Nadel has told three inventors—namely (1) Joe Diresta, (2) a company called "Wow Wee," and (3) Sheldon Goldberg—that Play By Play stole Nadel's idea and refused to compensate him for it and, as a result, those inventors are not providing Play By Play with their "best" toy ideas (Deposition transcript of Rod Spongberg, July 1, 1998, ("Spongberg Dep."), at 41, 45–46, 77–78), although they are continuing to bring some ideas to it. (*Id.* at 45, 62–63, 84). Play By Play's Vice President, Rod Spongberg, testified that he had no further information that Nadel made any false or misleading statements to anyone other than the three inventors noted above, although he harbored "suspicions" that such statements may have been made. (*Id.* at 78–82).

Diresta testified that he had independently concluded that Play By Play had stolen Nadel's concept based on (1) his involvement in introducing Nadel to Wasserman for the purpose of Nadel making his presentation and (2) an advertisement for Tornado Taz that Diresta saw at the New York toy fair. (Deposition transcript of Joseph Diresta, July 8, 1998, ("Diresta Dep.") at 35–36, 69–70). He also testified that Wasserman had called him seeking advice in connection with this lawsuit, (*Id.* at 39), and that he has not withheld showing products to Play By Play on the basis of Nadel's lawsuit. (*Id.* at 103).

Play By Play also alleges that Wow Wee broke off licensing negotiations with it over a product that Wow Wee had previously submitted to Play By Play, and subsequently submitted this product idea to two other toy companies after learning of Nadel's accusations. (Spongberg Dep. at 51, 58, 66–67). However, after the other two toy manufacturers rejected Wow Wee's toy concept, Wow Wee resumed negotiations with Play By Play, and Play By Play ultimately bought

Wow Wee's concept. (*Id.* at 63, 69). Play By Play nevertheless contends that it has suffered damages because of the resultant delay in bringing Wow Wee's toy to market supposedly caused by Nadel's falsehoods. (*Id.* at 70–71).

Andrew Ferber, a toy developer, testified that he had accompanied Nadel to his meeting with Wasserman. (Deposition transcript of Andrew Ferber, July 15, 1998, at 35, 54–55, 61–61). He also testified that he knew, from a source other than Nadel, that a company in Hong Kong claimed that Play By Play had stolen a toy idea from it (*Id.* at 23, 26–27), and that as a result of what he has heard in connection with both the Hong Kong company and Nadel's lawsuit, he would have "concerns" about doing business with Play By Play in the future (*Id.* at 27–28), although he has never done business with it in the past. (*Id.* at 37, 79).

Finally, Play By Play relies on the fact that Nadel disclosed his lawsuit to David Berko of Mattel Toys in support of its claims. Nadel asserts, however, that he mentioned the lawsuit to Berko in connection with his search for an expert witness. (Nadel Dep. at 144–46).

As a result of Nadel's alleged statements, Play By Play claims that its reputation has been harmed and that present and future customers have or will cease to do business with Play By Play. Based on these allegations, Play By Play counterclaims against Nadel for (i) violations of the Lanham Act; (ii) unfair competition; (iii) deceptive trade practices and false advertising; (iv) injury to business reputation; and (v) interference with prospective business relations.

## DISCUSSION

Pursuant to Fed.R.Civ.P. 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Adams v.*

*Department of Juvenile Justice of N.Y.*, 143 F.3d 61, 65 (2d Cir.1998) (citation omitted). In considering a motion for summary judgment, this Court must view the facts in the light most favorable to the non-moving party. *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (citing *Consarc Corp. v. Marine Midland Bank*, 996 F.2d 568, 572 (2d Cir.1993)). The party opposing the motion, however, cannot rely simply on the allegations or denials of its pleadings, but must demonstrate, by sufficient evidence, specific facts showing that there are genuine issues of material fact. *Corselli v. Coughlin*, 842 F.2d 23, 25 (2d Cir.1988).

## I. Defendant's Motion For Summary Judgment Dismissing Plaintiff's Complaint

■ Nadel claims that Play By Play violated its oral contract with him when it used his idea for a vibrating, spinning plush toy that makes sounds in developing Tornado Taz without compensating him. Under New York law, a party is not entitled to recover for theft of an idea unless the idea is novel and original. *AEB & Assocs. Design Group, Inc. v. Tonka Corp.*, 853 F.Supp. 724, 733–34 (S.D.N.Y.1994); *Ring v. Estee Lauder, Inc.*, 702 F.Supp. 76, 77 (S.D.N.Y.1988), *aff'd*, 874 F.2d 109 (2d Cir.1989); *Ed Graham Prods., Inc. v. National Broad. Co., Inc.*, 75 Misc.2d 334, 337, 347 N.Y.S.2d 766, 769 (N.Y.Sup.Ct. 1973). Thus, "when one submits an idea to another, no promise to pay for its use may be implied, and no asserted agreement enforced, if the elements of novelty and originality are absent, since the property right in an idea is based upon these two elements." *Downey v. General Foods Corp.*, 31 N.Y.2d 56, 61, 286 N.E.2d 257, 259, 334 N.Y.S.2d 874, 877 (1972).[1]

The question of whether an idea is sufficiently novel to merit protection under New York law may be determined on a motion for summary judgment. *M.H. Segan Ltd. Partnership v. Hasbro, Inc.*, 924 F.Supp. 512, 523 (S.D.N.Y.1996); *AEB*, 853 F.Supp. at 734; *Kavanau v. Courtroom Television Network*, No. 91–7959, 1992 WL 197430, at *4 (S.D.N.Y. Aug. 3, 1992); *Ring*, 702 F.Supp. at 77. "In establishing an idea's originality, a plaintiff cannot rest on mere assertions, but must demonstrate some basis in fact for its claims." *AEB*, 853 F.Supp. at 734 (citing *Woman Golfer, Inc. v. Meredith Corp.*, 792 F.Supp. 211, 214 (S.D.N.Y.1992)). Summary judgment is appropriate when an idea is not novel or original because the idea is (i) merely a clever or useful adaptation of existing knowledge; (ii) nothing more than a variation on a basic theme; or (iii) already in use in the industry at the time that the idea was submitted. *See, e.g., Ed Kaplan Assocs. v. Fisher–Price, Div. of the Quaker Oats Co.*, No. 87–5359, 1990 WL 74923, at *3 (S.D.N.Y. May 29, 1990); *Marraccini*, 221 A.D.2d at 98, 644 N.Y.S.2d at 877; *Oasis Music*, 161 Misc.2d at 635, 614 N.Y.S.2d at 884.

Plaintiff claims that his novel concept is that of a "soft toy containing an internal vibration mechanism which would cause the toy to spin around when placed on a flat surface and make a screaming or laughing sound." (Complaint ¶ 7). Plaintiff concedes, however, that there is nothing novel about a soft toy which contains an internal vibration mechanism that would cause the toy to vibrate and make a screaming or laughing sound. (Nadel Dep. at 120–21, 143). Lack of novelty for a toy that vibrates and makes noise is demonstrated by the existence of such popular toys as "Tickle Me Elmo" which was publicly available in July 1996 and which, the parties agree, is a soft toy that vibrates

---

1. Plaintiff urges that the correct legal standard to apply is that the idea need only be novel as to the buyer in order for it to be entitled to legal protection. Plaintiff bases its contention on *Apfel v. Prudential–Bache Securities Inc.*, 81 N.Y.2d 470, 616 N.E.2d 1095, 600 N.Y.S.2d 433 (1993). In *Apfel*, the court held that where a contract is entered into between the parties after the idea at issue has been disclosed, a court will not void that contract for lack of consideration where one party seeks to prove that the concept which is the subject of the postdisclosure contract is not nov-

el. *Id.* at 476–78, 616 N.E.2d at 1097–98, 600 N.Y.S.2d at 435–36. The situation in *Apfel* is clearly distinguishable from that at issue here, where there is no postdisclosure contract. *See, e.g., Murray v. National Broad. Co., Inc.*, No. 85–7675, 1993 WL 485584, at * 1–2 (S.D.N.Y. Nov. 24, 1993); *Marraccini v. Bertelsmann Music Group Inc.*, 221 A.D.2d 95, 97–98, 644 N.Y.S.2d 875, 877 (3d Dept.1996); *Oasis Music, Inc. v. 900 U.S.A., Inc.*, 161 Misc.2d 627, 630–31, 614 N.Y.S.2d 878, 881–82 (N.Y.Sup.Ct.1994).

and laughs when squeezed.[2] Consequently, plaintiff argues that the "novel" part of his idea is that the toy spins around when placed on a flat surface. (Mednick Decl. at ¶ 7).

As set forth above, plaintiff created his prototype by inserting a vibration mechanism from a commercially available plastic Halloween toy into a commercially available plush monkey. When turned on and placed on a flat surface, the vibrations will cause the Halloween toy to spin around. (*See* videotape of Halloween toy annexed as Exh. I to Crowson Decl). Nevertheless, plaintiff claims that his idea is novel because that Halloween toy, and others like it, were designed to vibrate while hung from a cord and were not designed to spin around on a flat surface. Although he concedes that those toys in fact spin when placed on a flat surface, he contends that this is not the manner in which they were designed to be used and, thus, this should not affect the novelty of his idea.

■ This Court, however, does not need to reach the issue of whether combining elements of two commercially available toys to make another toy may be novel or is, as a matter of law, merely a "clever adaptation of existing technology," for Play By Play has demonstrated that plaintiff's idea was one which was already in use in the industry at the time that it was submitted. *See Woman Golfer*, 792 F.Supp. at 214; *Ed Kaplan*, 1990 WL 74923, at *3; *Marraccini*, 221 A.D.2d at 98, 644 N.Y.S.2d at 877.

Play By Play has submitted expert testimony that numerous toys containing the characteristics of plaintiff's monkey were in existence prior to the October 1996 meeting

between plaintiff and Wasserman. In particular, defendant contends that a toy called "Giggle Bunny," a soft toy which laughs and vibrates and spins when placed on a flat surface, has been commercially available since 1994. (Declaration of Burt Reiner dated September 11, 1998, at ¶¶ 8, 10). After viewing a videotape of this toy,[3] this Court concludes that Giggle Bunny is indeed a toy that contains these characteristics. Although Nadel continues to assert the novelty of his toy monkey, he does not offer any evidence that it contains characteristics that are not present in Giggle Bunny. Because Play By Play has produced uncontroverted evidence demonstrating the existence of a plush toy, commercially available since 1994, that contained an internal vibration mechanism which causes the toy to spin around and vibrate when placed on a flat surface and which makes a laughing or screaming sound, Nadel's concept is not novel. Summary judgment is, therefore, granted dismissing plaintiff's claims.

## II. *Plaintiff's Motion For Summary Judgment Dismissing Defendant's Counterclaims*

### A. Lanham Act

Play By Play has counterclaimed against Nadel for false designation of origin, false advertising, product disparagement, and trade libel pursuant to section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and New York common law. The basis for all of these claims is Nadel's purportedly false statements made to others.

---

**2.** It is also undisputed that Tyco, which previously was licensed by Warner Bros. to sell toys based on the "Looney Tunes" characters, intended to use "Tickle Me Elmo's" internal vibration mechanism inside a plush Tazmanian Devil toy to create a toy known as "Tickle Me Taz." (Exhibit 2 to Declaration of Melvin Mednick dated October 5, 1998 ("Mednick Decl.")). Thus, the idea of a Tazmanian Devil plush toy which would vibrate and make sounds is not novel.

**3.** Plaintiff has also moved to strike the videotape of "Giggle Bunny" on the grounds that it was improperly introduced into the litigation and was not properly authenticated. However, defendant's expert explicitly relied on the Giggle Bun-

ny toy in his report pursuant to Fed.R.Civ.P. 26(a)(2)(B) and defendant had previously submitted photographs of Giggle Bunny in support of its motion. Nadel was free to cross examine Play By Play's expert in connection with the expert's reliance on Giggle Bunny for the proposition that Nadel's toy idea was not novel. Plaintiff, however, chose not to do this and cannot now complain that this evidence should be stricken from the record. Moreover, the tape was adequately authenticated. *See* Supplemental Declaration of Bert Reiner dated October 26, 1998, and Declaration of Nasri V.B. Hage dated October 27, 1998. Plaintiff's motion to strike the Giggle Bunny videotape is therefore denied.

In order for a false statement to be actionable pursuant to the Lanham Act it must constitute "commercial advertising or promotion," which is communication that is (1) commercial speech; (2) made by a defendant who is in commercial competition with the plaintiff; (3) for the purpose of influencing consumers to buy the defendant's goods or services; and (4) disseminated sufficiently to the relevant purchasing public to constitute advertising or promotion within that industry. *See* Lanham Act § 43(a)(1)(B), 15 U.S.C. § 1125(a)(1)(B); *Mobius Management Sys., Inc. v. Fourth Dimension Software, Inc.,* 880 F.Supp. 1005, 1019–20 (S.D.N.Y.1994) (citing *Gordon & Breach Science Publishers S.A. v. American Inst. of Physics,* 859 F.Supp. 1521, 1535–36 (S.D.N.Y. 1994)).

Nadel's statements do not constitute "commercial advertising or promotion" within the meaning of the Lanham Act. First, plaintiff is not in direct competition with Play By Play. The Lanham Act "has never been applied to stifle criticism of the goods or services of another by one . . . who is not engaged in marketing or promoting a competitive product or service. . . ." *National Artists Management Co., Inc. v. Weaving,* 769 F.Supp. 1224, 1233 (S.D.N.Y.1991) (quoting *Wojnarowicz v. American Family Ass'n,* 745 F.Supp. 130, 141–42 (S.D.N.Y.1990)). Notwithstanding the fact that they both develop toy ideas, only Play By Play markets and sells the toys. (*See* Nadel Dep. 38–39). Although Play By Play relies on Nadel's own statements for the proposition that they are in direct competition with each other, Nadel's testimony was that he and Play By Play are "competing for toy dollars" only in the sense that if Play By Play makes or purchases a concept of his, he cannot sell that concept to another company. (*Id.* at 440–41). Second, although Play By Play alleges that Nadel's allegedly false statements had the effect of dissuading individuals from doing business with Play By Play, it does not allege that Nadel made these statements for the purpose of persuading those people to buy his goods or services, as is required for that language to constitute commercial advertising or promotion. Therefore, Play By Play's

counterclaim pursuant to § 43(a) of the Lanham Act is dismissed.

### B. Unfair Competition

The standard for setting forth a claim of unfair competition pursuant to New York common law is essentially the same as for stating a claim pursuant to section 43(a) of the Lanham Act. *See, e.g., Sally Gee, Inc. v. Myra Hogan, Inc.,* 699 F.2d 621, 623–24 (2d Cir.1983). *See also Genesee Brewing Co., Inc. v. Stroh Brewing Co.,* 124 F.3d 137, 149 (2d Cir.1997) ("Under New York law, common law unfair competition claims closely resemble Lanham Act claims except insofar as the state law claim may require an additional element of bad faith or intent") (quoting *Girl Scouts v. Bantam Doubleday Dell Publ'g Group, Inc.,* 808 F.Supp. 1112, 1131 (S.D.N.Y.1992), *aff'd,* 996 F.2d 1477 (2d Cir. 1993)). Consequently, Play By Play's claim of unfair competition under New York law is also dismissed.

### C. Deceptive Trade Practices & False Advertising

Play By Play's claims pursuant to New York General Business Law §§ 349 and 350 for deceptive business practice and false advertising, respectively, also fail. Both statutes are directed at wrongs against the consuming public and, consequently, a plaintiff bringing an action under either must allege conduct that affects the public interest. *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.,* 85 N.Y.2d 20, 24–25, 647 N.E.2d 741, 744, 623 N.Y.S.2d 529, 532 (1995). Private contract disputes that are unique to the parties involved—such as this one—do not fall within the ambit of sections 349 and 350. *Mastercard Int'l, Inc. v. Arbel Corp.,* 13 U.S.P.Q.2d 1958, 1965, 1989 WL 125781 (S.D.N.Y.1989). *See also Genesco Entertainment v. Koch,* 593 F.Supp. 743, 751–53 (S.D.N.Y.1984). Play By Play is clearly not acting in the role of a consumer advocate. Consequently, Nadel's motion for summary judgment dismissing Play By Play's counterclaims pursuant to New York General Business Law §§ 349 and 350 is granted.

## D. Injury To Business Reputation

Section 360–1 of the New York General Business Law[6] is an anti-dilution statute intended to protect a trademark owner's goodwill by preventing parties from diluting that mark by marketing inferior products under an identical or similar mark. *See, e.g., Essie Cosmetics, Ltd. v. Dae Do Int'l, Ltd.*, 808 F.Supp. 952 (E.D.N.Y.1992); *Bristol–Myers Co. v. Staff Supermarket Assocs., Inc.*, 44 Misc.2d 634, 254 N.Y.S.2d 500 (N.Y.Sup.Ct. 1964). "[I]njury to a recognized trade name ... lies at the heart of the wrong." *Sally Gee*, 699 F.2d at 624 n. 5. "The evil which the Legislature sought to remedy [by enacting the statute] was ... a cancer-like growth of dissimilar products or services which feeds upon the business reputation of an established distinctive trade-mark or name." *Id.* at 624 (citing *Allied Maintenance Corp. v. Allied Mechanical Trades, Inc.*, 42 N.Y.2d 538, 544, 369 N.E.2d 1162, 1165, 399 N.Y.S.2d 628, 632 (1977)).

■ Here, Play By Play does not allege that Nadel is diluting its trademark in "Tornado Taz" by marketing his own "Tornado Taz." Consequently, Nadel's summary judgment motion to dismiss this counterclaim is granted.

## E. Tortious Interference With Prospective Business Relations

■ To state a claim for tortious interference with prospective business relations, a plaintiff must demonstrate (i) business relations with a third party; (ii) the defendant's interference with those business relations; (iii) that the defendant acted with the sole purpose of harming the plaintiff or that the defendant used dishonest, unfair, or improper means; and (iv) injury to the relationship. *See Purgess v. Sharrock*, 33 F.3d 134, 141 (2d Cir.1994) (citation omitted). *See also PPX Enters., Inc. v. Audiofidelity Enters., Inc.*, 818 F.2d 266, 269 (2d Cir.1987) (whether plaintiff is alleging "tortious interference with: prospective economic advantage, beneficial business relations, prospective business advantage, and business or economic relations ... the elements necessary to establish

such a claim remain constant") (citation omitted).

■ Play By Play claims that Nadel interfered with its prospective business relations with three inventors—Diresta, Goldberg, and a company known as Wow Wee. All three continue to do business with Play By Play. Diresta and Goldberg both testified that they are not withholding ideas from Play By Play and Play By Play has in fact purchased an idea from Wow Wee after Wow Wee learned of Nadel's concerns. Although Play By Play alleges that it is "concern[ed]" that these three are withholding their best ideas from Play By Play, (Spongberg Dep. at 41, 45–46, 62–63, 77–78, 84), it has not provided any factual support whatsoever for this allegation and this Court will not presume injury based on the mere "concern" that certain inventors are withholding their best ideas from Play By Play. *See Ortho Pharm. Corp. v. Cosprophar, Inc.*, 32 F.3d 690, 697 (2d Cir.1994).

As for Nadel's statements to Ferber, Play By Play's claim based on Ferber's assertions that he would be disinclined to do business with Play By Play in the future must fail because Play By Play has never had business relations with Ferber and has not presented any evidence in support of its allegation that it is interested in doing business with him in the future. More importantly, Play By Play has cited no authority for the proposition that the filing of a complaint constitutes tortious interference with prospective business relations between the defendant and third parties who learn about the complaint.

Finally, there is no merit to Play By Play's assertion that a plaintiff informing someone in the industry about a lawsuit in the context of searching for an expert witness constitutes tortious interference with potential business relations. Moreover, Play By Play has not alleged any injury arising from any alleged misrepresentations by Nadel to Berko, and it has not alleged that it has ever done business, or intends to do business, with Berko.

For the foregoing reasons, Nadel's motion for summary judgment dismissing Play By Play's counterclaim for tortious interference

---

6. Until 1996, N.Y.Gen.Bus.Law § 360–1 was de-   nominated as N.Y.Gen.Bus.Law. § 368–d. ·

with prospective business relations is hereby granted.

CONCLUSION

For the reasons set forth above, (a) defendant's motion for summary judgment dismissing the complaint and (b) plaintiff's motion for summary judgment dismissing defendant's counterclaims are granted.