Chief Judge Fuld.
The plaintiff, an airline pilot, brought this action against the defendant General Foods Corporation to recover damages for the alleged misappropriation of an idea.[1] *59 It is his claim that he suggested that the defendant’s own gelatin product, “ Jell-O,” he named “ Wiggley ” or a variation of that word, including ‘ ‘ Mr. Wiggle, ’ ’ and that the product be directed towards the children’s market; that, although the defendant disclaimed interest in the suggestion, it later offered its product for sale under the name ‘' Mr. Wiggle. ’ ’ The defendant urges — by way of affirmative defense — that the plaintiff’s ‘' alleged" product concept and name ’ was independently created and developed ” by it. The plaintiff moved for partial summary judgment “ on the question of liability ” on 5 of its 14 causes of action and the defendant cross-moved for summary judgment dismissing the complaint. The court at Special Term denied both motions, and the Appellate Division affirmed, granting leave to appeal to this court on a certified question.
The plaintiff relies chiefly on correspondence between himself and the defendant, or, more precisely, on letters over the signature of a Miss Dunham, vice-president in charge of one of its departments. On February 15, 1965, the plaintiff wrote to the defendant, stating that he had an “ excellent idea to increase the sale of your product jell-o * * * making it available for children ’ ’. Several days later, the defendant sent the plaintiff an " Idea Submittal Form ” (ISF) which included a form letter and a space for explaining the idea.[2] In that form, the plaintiff suggested, in essence, that the product ‘ ‘ be packaged & distributed to children under the' name ‘ wig-l-e ’ (meaning wiggly or wiggley) or ‘ wiggle-e ’ or ‘ wiggle-eee ’ or ‘ wiglet.’ ” He explained that, although his children did not ‘ ‘ get especially excited about the Name jell-o, or wish to eat it ”, when referred to by that name, ‘ ‘ the kids really took to it fast ” when his wife ' ‘ called it ‘ wiggle-y,’ ” noting that they then ‘ ‘ associate [d] the name to the ' wiggle-ing ’ dessert. ’ ’ Although this is the only recorded proof of his idea, the plaintiff maintains that he sent Miss Dunham two handwritten letters in which he set forth other *60 variations of “ Wiggiley,” including “ Mr. Wiggley, Wiggle, Wiggle-e. ’ ’[3]
A letter, dated March 8, 1965, over the signature of Miss Dunham, acknowledged the submission of the ISF and informed the plaintiff that it had no interest in promoting his suggestion. However, in July, the defendant introduced into the market a Jell-0 product which it called “ Mr. Wiggle.” The plaintiff instituted the present action some months later. In addition to general denials, the answer contains several affirmative defenses, one of which, as indicated above, recites that the defendant independently created the product’s concept ánd name before thexplain tiff’s submission to it.
In support of its position, the defendant pointed to depositions taken by the plaintiff from its employees and from employees of Young & Rubicam, the firm which did its advertising. From these it appears that the defendant first began work on a children’s gelatin product in May, 1965 — three months after the plaintiff had submitted his suggestion — in response to a threat by Pillsbury Company to enter the children’s market with a product named “ Jiggly.” Those employees of the defendant in charge of the project enlisted the aid of Young & Rubicam which, solely on its own initiative, ‘ ‘ came up with the name ‘ Mr. Wiggle ’”. In point of fact, Miss Dunham swore in her deposition that she had had no knowledge whatever of the plaintiff’s idea until late in 1966, shortly before commencement of his suit; that ideas submitted by the general public were kept in a file by an assistant of hers “ under lock and key”; and that no one from any other of the defendant’s departments ever asked to research those files. The assistant, who had alone handled the correspondence with the plaintiff over Miss Dun-ham’s signature — reproduced by means of a signature duplicating machine — deposed that she had no contact whatsoever with Young & Rubicam and had never discussed the name “ Wiggle ” or “ Mr. Wiggle ” with any one from that firm.
In addition to the depositions of its employees and the employees of its advertising agency, the defendant submitted documentary proof of its prior use of some form of the word *61 “ wiggle ” in -connection with its endeavor to sell Jell-0 to children. Thus, it submitted (1) a copy of a report which Young & Rubicam furnished it in June of 1959 proposing “ an advertising program directed at children as a means of securing additional sales volume ”; (2) a copy of a single dimensional reproduction of a television commercial, prepared in 1959 and used thereafter by the defendant in national and local television broadcasts, which contained the phrase, “ all that wiggles is hot jell-o and (3) a copy of a newspaper advertisement that appeared in 1960; depicting an Indian “squaw” puppet and her “papoose” preparing Jell-0 — the “top favorite in every American tepee ” — and suggesting to mothers that they “ [m]ake a wigglewam of Jell-0 for your tribe tonight! ”
The critical issue in this ease turns on whether the idea suggested by the plaintiff was original or novel. An idea may be a property right. But, when one submits an idea to another, no promise to pay for its use may be implied, and no asserted agreement enforced,, if the elements of novelty and originality are absent, since the property right in an idea is based upon these two elements. (See Soule v. Bon Ami Co., 201 App. Div. 794, 796, affd. 235 N. Y. 609; Bram v. Dannon Mill Prods., 33 A D 2d 1010; Santilli v. Philip Morris & Co., 283 F. 2d 6, 7; Lueddecke v. Chevrolet Motor Co., 70 F. 2d 345; Puente v. President & Fellows of Harvard Coll., 149 F. Supp. 33, 34, affd. 248 F. 2d 799, cert. den. 356 U. S. 947.) The Bram case is illustrative; in reversing Special Term and granting summary judgment dismissing the complaint, the Appellate Division made it clear that, despite the asserted existence of an agreement, the plaintiff could not recover for his idea if it was not original and had been used before (33 A D 2d, at p. 1010): “ The idea submitted by the plaintiff to the defendants, the concept of depicting an infant in a highchair eating and enjoying yogurt, was lacking in novelty and had been utilized by the defendants * * * prior to its submission. Lack of novelty in an idea is fatal to any cause of action for its unlawful use. In the circumstances a question of fact as to whether there existed an oral agreement between the parties would not preclude summary judgment.” In the case before us, the record indisputably establishes, first, that the idea submitted' — use of a word (“ wiggley ” or “wig *62 gle ”) descriptive of the most obvious characteristic of Jell-O, with the prefix “Mr.” added — was lacking in novelty and originality and, second, that the defendant had envisaged the idea, indeed had utilized it, years before the plaintiff submitted it. As already noted, it had made use of the word " wiggles ” in a 1959 television commercial and the word “ wigglewam ” in a 1960 newspaper advertisement. It was but natural, then, for the defendant to employ some variation of it to combat Pillsbury’s entry into the children’s market with its “ Jiggly.” Having relied on its own previous experience, the defendant was free to make use of “ Mr. Wiggle ” without being obligated to compensate the plaintiff.
It is only necessary to add that, in light of the complete pretrial disclosure in this case of every one who had any possible connection with the creation of the name, the circumstance, adverted to by the courts below, that the facts surrounding the defendant’s development of the name were within the knowledge of the defendant and its advertising agency does not preclude a grant of summary judgment. In the present case, it was shown beyond peradventure that there was no connection between Miss Dunham’s department and the defendant’s other employees or'the employees of the advertising outfit who took part- in, the creation of ‘ ‘ Mr. Wiggle. ’ ’ In exhaustive discovery proceedings — which included examinations of all parties concerned either with that name or the defendant’s idea files — the plaintiff was furnished with every conceivable item of information in the defendant’s possession bearing on the privacy and confidentiality of such files and on the absence of access to them by those outside of Miss Dunham’s department. The hope, expressed by the plaintiff that he may be able to prove that the witnesses who gave testimony in examinations before trial lied, is clearly insufficient to create an issue of fact requiring a trial or defeat the defendant’s motion for summary judgment. (Cf. Shapiro v. Health Ins. Plan, 7 N Y 2d 56, 63; Bank for Sav. v. Rellin Constr. Co., 285 N. Y. 708.)
The order appealed from should be reversed, without costs, the question certified answered in the negative and the defendant’s motion for summary judgment dismissing the complaint granted.
*63 Judges Burke, Scileppi, Bergan, Breitel, Jasen and Gibson concur.
Order reversed, without costs, and case remitted to Special Term for further proceedings in accordance with the opinion herein. Question certified answered in the negative.

. Although the complaint’s demand was for $34,600,000, that aipount was changed, by stipulation, to $2,800,000, representing $200,000 of damages for each of the complaint’s 14 causes of action.

. The form letter — signed and returned by the plaintiff — recited that “ I submit this suggestion with the understanding, which is conclusively evidenced by my use and transmittal to you of this form, that this suggestion is not submitted to you in confidence, that no confidential relationship has been or will be established between us and that the use, if any, to be made of this suggestion by you and the compensation to be paid therefor, if any, if you use it, are matters resting solely in your discretion.”

. Neither of these letters was found in the defendant’s files, nor did the plaintiff have the originals or exact copies.