**Larry L. SELLERS, Plaintiff-Appellant,**

v.

**AMERICAN BROADCASTING CO., Geraldo Rivera, and A B C News, Inc., Defendants-Appellees.**

**No. 81–7223.**

United States Court of Appeals, Eleventh Circuit.

Feb. 22, 1982.

**1208**

Larry W. Thomason, William F. Rucker, Decatur, Ga., for plaintiff-appellant.

King & Spalding, Charles L. Gowen, Joseph R. Bankoff, Bruce W. Baber, Atlanta, Ga., for defendants-appellees.

Before TUTTLE, HILL and JOHNSON, Circuit Judges.

JOHNSON, Circuit Judge:

Plaintiff, Larry L. Sellers, filed a three-count complaint against defendants American Broadcasting Co. (ABC) and Geraldo Rivera, alleging breach of contract, copyright infringement and misappropriation. The district court granted summary judgment in favor of the defendants and plaintiff appeals. We affirm.

In June 1978, Sellers informed Rivera, an investigative reporter occasionally employed by ABC, that he had an "exclusive story" concerning rock-and-roll singer Elvis Presley's death. Before revealing the details, however, Sellers demanded that Rivera sign an agreement guaranteeing him all copyright privileges to the story and requiring ABC to publicly credit him with uncovering the true cause of the singer's death.[1] In return, Sellers agreed to provide ABC and Rivera with the "exclusive story" and further agreed not to release the story to any other network or reporter.[2] Upon execution of the contract, Sellers proceeded to articulate his theory. Sellers recorded the entire conversation and a transcript of the

---

**1.** The entire agreement states:

I, Larry L. Sellers, do hereby agree not to release this exclusive story to any reporter other than Geraldo Rivera or any network other than ABC until the network has first released said story within a reasonable period of time or thirty days. Once the story has been released, other media forms may be contacted by Larry Sellers.

I, Geraldo Rivera, do hereby agree to grant Larry Sellers all copy-write [sic] privileges of the exclusive Elvis Presley story and full claim for the discovery of the story by ac-

knowledgement in any media use made of it from this day forth.

If the story is accepted for further investigation, all expenses incurred by Larry Sellers will be reimbursed by ABC.

Should the story be proven false, this contract is hereby null and void.

**2.** Plaintiff did, however, contact the *Atlanta Journal* and *National Enquirer* about his "exclusive story." Neither periodical appears to have published the story.

meeting has been made part of the record in this case.

According to Sellers, cortisone was prescribed for Presley during the three-year period prior to his death. Presley's personal physician and personal bodyguard replaced the cortisone with placebos. Deprivation of the cortisone caused a collapse of Presley's cardiovascular system, resulting in death. Sellers hypothesized that the physician and the bodyguard committed the murder in order to prevent Presley from seeking the repayment of a $1.3 million loan to them to be used for the construction of a racketball center. As an alternative theory, Sellers postulated that the singer might have been suffocated by either the physician or the bodyguard.

Rivera informed the plaintiff that the story could not be used unless verified. He suggested that plaintiff investigate the matter further and contact him in the event that verification was obtained. Following the conversation with Rivera, Sellers traveled to Memphis on two occasions, apparently in an effort to obtain the needed support for his theory. During the second trip, Sellers called Mrs. Rivera and informed her that he had uncovered proof of his theory but refused to relate to her the nature of the new evidence. The phone call constituted the last time Sellers contacted either Rivera or ABC concerning the story.

More than nine months after signing the agreement with Sellers, Rivera and producer Charles Thomsen decided to do a feature story on Presley's death. After a two-month investigation, it was determined that Presley died of polypharmacy (interaction of prescription drugs) and not cardiac arrhythmia as officially listed. ABC broadcast an hour-long special concerning the

information uncovered during the "Rivera-Thomsen" investigation. Geraldo Rivera appeared on the program as a correspondent. ABC also did a number of follow-up stories on Presley's death. In neither the hour-long special nor the follow-up stories did the network suggest that Presley was murdered by a withdrawal of cortisone or by suffocation.

Sellers brought suit contending that ABC and Rivera misappropriated his "exclusive story" concerning the singer's death. Sellers also asserted claims for breach of contract and copyright infringement. The district court entered summary judgment for defendants. The court determined that plaintiff's "exclusive story" consisted of the theory that Presley had been murdered by his bodyguard and his personal physician through a deprivation of cortisone. Since ABC and Rivera did not use Sellers' "exclusive story" in any of their broadcasts, the court concluded that there had not been any misappropriation or breach of the written agreement.

On appeal, Sellers contends that a dispute of material fact exists concerning the precise scope of his "exclusive story" and, accordingly, summary judgment was improvidently granted. Sellers asserts that he informed Rivera not only of the possibility that Presley might have been murdered through a deprivation of cortisone, but also that the cause of death might have been the interaction of numerous prescription drugs, that the singer's personal physician may have been grossly negligent in overprescribing drugs for Presley and that there had been a cover-up of the true cause of death. Assuming without deciding that Sellers did present these additional theories to Rivera,[3]

---

**3.** A review of the transcribed meeting between the parties reflects that Sellers never specifically told Rivera that the personal physician may have been grossly negligent in overprescribing drugs for Presley. Moreover, the lone reference at the meeting to the possibility that Presley died of the interaction of drugs in his body was made by Sellers *in passim* and appears to be nothing more than background information. Plaintiff nonetheless contends that he did raise these theories at the meeting with Rivera and

cites as support conclusory statements made at his deposition. Conclusory statements, unsubstantiated by facts in the record, will normally be insufficient to defeat a motion for summary judgment. *Broadway v. City of Montgomery, Ala.*, 530 F.2d 657, 660 (5th Cir. 1976). However, because we conclude that plaintiff cannot recover even if he did articulate these theories to Rivera, we need not determine whether plaintiff successfully raised an issue of material

we nonetheless conclude that they are so vague and uncertain as to be unenforceable as a matter of law.

■ Under New York law,[4] a contract will not be enforced if an essential element is vague, indefinite or incomplete. *Brown & Guenther v. North Queensville Homes, Inc.*, 18 A.D.2d 327, 239 N.Y.S.2d 482, 484 (1963); *Campbell v. WABC Towing Corp.*, N.Y.Sup., 356 N.Y.S.2d 455, 457 (S.Ct.1974). *See also* 1 A. CORBIN, CONTRACTS § 95, at 394 (1950) ("Vagueness of expression, indefiniteness and uncertainty as to any of the essential terms of an agreement, have often been held to prevent the creation of an enforceable duty."). A complete review of the transcribed meeting between the parties shows that at best Sellers made broad, general statements concerning the possibility of overdose, gross negligence by the personal physician and a cover-up. The transcript demonstrates that plaintiff failed to provide any substantiating details for these vague allegations. He did not make clear whether Presley's death resulted from a single drug or a combination of drugs. He made no effort to provide the name of any specific drug that had been overprescribed by the personal physician. Nor did plaintiff show that medication unnecessary for the treatment of the singer's illnesses was prescribed for Presley. Finally, references to books and newspaper articles[5] constituted the only support for these vague

and uncertain statements. Sellers' theory that Presley was murdered by a withdrawal of cortisone may well have been specific enough to give rise to an enforceable agreement. The district court, however, concluded that the defendants did not utilize the cortisone-murder theory in any of their broadcasts and did not, therefore, breach the agreement. Plaintiff does not challenge this conclusion on appeal.

■ As to plaintiff's remaining claim,[6] New York courts will permit recovery for the misappropriation of an idea or theory if (1) the idea is novel; (2) the idea is in a concrete form; and (3) the defendant makes use of the idea. *Galanis v. Proctor and Gamble Corp.*, 153 F.Supp. 34, 38 (S.D. N.Y.1957). We conclude that Sellers' theory that Presley died of an interaction of prescription drugs was neither novel, unique nor original. Plaintiff's own exhibits show that a number of newspapers had speculated that Presley's death might have been drug-related long before the meeting between Sellers and Rivera. As to Sellers' other vague theories, we conclude that they were not sufficiently concrete to give rise to a cause of action for misappropriation.[7]

For the reasons stated herein, judgment for the defendants is AFFIRMED.

---

fact as to the precise scope of his "exclusive story."

4. The district court concluded that New York law controlled the interpretation of the contract. Neither party disputes this conclusion.

5. We note that at least a portion of plaintiff's "exclusive story", particularly the theory that Presley died from an interaction of drugs, appeared in a number of newspaper articles prior to his discussion with Rivera. Under New York law, an idea or theory does not constitute property and will not support the right to recover in contract unless original. *Downey v. General Foods Corp.*, 31 N.Y.2d 56, 334 N.Y. S.2d 874, 877, 286 N.E.2d 257 (1972); *accord, Ed Graham Products, Inc. v. NBC, Inc.*, N.Y. Sup., 75 Misc.2d 334, 347 N.Y.S.2d 766, 768 (S.Ct.1973) ("where plaintiff's idea is wholly lacking in novelty, no cause of action in contract or tort can stand ..."). Thus, to the

extent plaintiff's "exclusive story" was already widely disseminated and in the public domain, he cannot recover in contract for the use of his theory by the defendants.

6. The district court concluded that plaintiff had not copyrighted his "exclusive story" and was therefore not entitled to recover for copyright infringement. The plaintiff does not challenge this determination on appeal.

7. The only portion of plaintiff's "exclusive story" that may have been sufficiently concrete to sustain a cause of action for misappropriation was his theory that Presley died from a withdrawal of cortisone. The district court, however, found that the defendants did not use the theory in any of their broadcasts. Plaintiff does not challenge this conclusion on appeal.