[644 NYS2d 875]

Nina Marraccini, Appellant, v Bertelsmann Music Group, Inc., et al., Respondents.

Third Department, July 3, 1996

## APPEARANCES OF COUNSEL

*Clifford L. Davis,* White Plains, for appellant.

*Parcher & Hayes, P. C.,* New York City *(Steven M. Hayes* and *Jeffrey I. Carton* of counsel), for Bertelsmann Music Group, Inc. and another, respondents.

*Sherman & Howard, L. L. C.,* Denver, Colorado *(O'Melveny & Myers,* New York City *[James G. Rizzo]* of counsel), for Tele-Communications, Inc., respondent.

## OPINION OF THE COURT

PETERS, J.

Plaintiff alleges that during 1992 she met with Thomas Mc-Partland, vice-president of corporate business affairs and deputy general counsel of defendant Bertelsmann Music Group, Inc. (hereinafter BMG),[1] to discuss her concept of creating a new cable music channel called "POP TV" to specifically market "new and established artists and to have the artists promote music, fashion lines, accessories and merchandise" by means of home shopping. Upon McPartland's expression of interest, plaintiff prepared a written proposal and submitted it nine months later for review. Plaintiff contends that before submitting her written proposal, she entered into an oral agreement with BMG to hold the proposal in confidence and that if the proposal was used, she would be compensated and receive both an equity position in the new cable channel and a job position in the new venture.

BMG expressed continuing interest in plaintiff's concept, explaining that it had "been in [the] process of aggressively looking at the cable industry and the home shopping business as potential areas of expansion for [BMG]". In the spring of 1993, plaintiff submitted a revised proposal and various marketing analyses as requested by BMG. On September 16, 1993, BMG announced a joint venture with defendant Tele-Communications, Inc. (hereinafter TCI) to form a music video cable television channel "that will enable viewers to choose their favorite music videos while having the ability to purchase a diverse array of music-related products and services through the convenience of home shopping". In June 1994, however, defendants announced that they were not going to proceed with their proposed joint venture.

Plaintiff thereafter commenced this action alleging that her idea was unique and misappropriated by defendants. Seven

---

1. Defendant BMG Ventures is a subsidiary of defendant Bertelsmann Music Group, Inc. and they will thus be referred to collectively as BMG.

causes of action were set forth alleging, *inter alia*, breach of contract, breach of implied contract, unjust enrichment, fraud and misappropriation. Both BMG and TCI[2] successfully moved to dismiss the complaint for failure to state a cause of action. Plaintiff now appeals.

It is well settled that "[u]nder modern pleading theory, a complaint should not be dismissed on a pleading motion so long as, when the plaintiff is given the benefit of every possible favorable inference, a cause of action exists" (*Rovello v Orofino Realty Co.*, 40 NY2d 633, 634). Further, while affidavits received on such motion may not typically be utilized to determine whether there is evidentiary support for the pleadings, a dismissal can, in fact, be granted if "the affidavits establish conclusively that plaintiff has no cause of action" (*supra*, at 636).

Plaintiff contends that there existed an oral contract between herself and defendants whereby she agreed to disclose the details of her proposal in return for an indefinite payment, confidentiality, an undefined job and an undefined equity stake in this new undefined venture. Seeking to salvage the enforceability of this contract by contending that all open-ended terms were definable by objective industry standards for idea submissions, we note that the standard to which plaintiff refers is not referenced in the record. "[D]efiniteness as to material matters is of the very essence in contract law * * * [and] a mere agreement to agree, in which a material term is left for future negotiations, is unenforceable" (*Martin Delicatessen v Schumacher*, 52 NY2d 105, 109; *see, Matter of 166 Mamaroneck Ave. Corp. v 151 E. Post Rd. Corp.*, 78 NY2d 88; *Danton Constr. Corp. v Bonner*, 173 AD2d 759). Accordingly, we must conclude, as did Supreme Court, that the terms allegedly agreed to were far too indefinite to constitute an enforceable contract. Notably, plaintiff's affidavit, potentially useful to cure deficiencies in her complaint, does not contain sufficient detail to warrant a contrary determination.

Even assuming, arguendo, that there was a nondisclosure agreement between these parties prior to plaintiff's actual submission of her proposal, we find plaintiff's reliance on *Apfel v Prudential-Bache Sec.* (81 NY2d 470) inapposite. In *Apfel*, the parties indisputably entered into a contract which was

---

2. TCI contends that the complaint alleges its receipt of benefits as a result of its association with BMG. Plaintiff does not contend that she presented her concept to TCI, that she had any relationship with TCI (contractual or otherwise) or that TCI was aware of her concept.

breached when the defendant refused to make any further payments upon the theory that "the ideas conveyed by plaintiffs had been in the public domain at the time of the sale agreement and that what plaintiffs sold had never been theirs to sell" (*supra*, at 474). Applying traditional principles of contract law, Supreme Court found that defendant had received something of value to constitute valid consideration since it thoroughly reviewed plaintiffs' proposal before it bought the idea. In this type of postdisclosure agreement, the analysis is based upon contract theory where the validity of the consideration is the issue. "[T]he question is not whether the buyer misappropriated property from the seller, but whether the idea had value to the buyer and thus constitutes valid consideration. * * * The lack of novelty, in and of itself, does not demonstrate a lack of value" (*supra*, at 478).

In analyzing a proprietary interest in a claim based upon intellectual property principles, however, the Court of Appeals explained that the rule in *Downey v General Foods Corp.* (31 NY2d 56) and its progeny remained intact (*Apfel v Prudential-Bache Sec.*, *supra*, at 477). When there is no postdisclosure agreement for the use of an idea, "no promise to pay for its use may be implied, and no asserted agreement enforced, if the elements of novelty and originality are absent, since the property right in an idea is based upon these two elements" (*Downey v General Foods Corp.*, *supra*, at 61). Thus, notwithstanding plaintiff's contentions to the contrary, the documentary evidence indisputably indicates that the concept for a music video cable television channel, with the marketing of associated merchandise by means of home shopping, was an idea preexisting in the public domain prior to 1992 and that plaintiff's proposal was a creative variation on this theme (*see, Murray v National Broadcasting Co.*, 844 F2d 988, *cert denied* 488 US 955; *AEB & Assocs. Design Group v Tonka Corp.*, 853 F Supp 724; *Oasis Music v 900 U.S.A.*, 161 Misc 2d 627). Accordingly, Supreme Court's reliance upon *Downey* was in all respects proper.

While typically the pleaded facts will be presumed to be true and accorded a favorable inference, "allegations consisting of bare legal conclusions, as well as factual claims either inherently incredible or flatly contradicted by documentary evidence [will] not [be] entitled to such consideration" (*Roberts v Pollack*, 92 AD2d 440, 444; *accord, Caniglia v Chicago Trib-*

*une-N. Y. News Syndicate*, 204 AD2d 233; *Mark Hampton, Inc. v Bergreen*, 173 AD2d 220, *lv denied* 80 NY2d 788).

Supreme Court's order is affirmed in it entirety.

MIKOLL, J. P., CREW III, YESAWICH JR. and SPAIN, JJ., concur.

Ordered that the order is affirmed, without costs.