Filed 2/26/21  Technology From Heaven Unlimited v. Mattel CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

|  |  |
|---|---|
| TECHNOLOGY FROM HEAVEN UNLIMITED,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>MATTEL, INC.,<br><br>Defendant and Respondent. | B302299<br><br>(Los Angeles County<br>Super. Ct. No. 19STCV04869) |

APPEAL from an order of the Superior Court of Los Angeles County, Randolph Hammock, Judge.  Affirmed.

Steinhart Law Offices and  Terran T. Steinhart for Plaintiff and Appellant.

Kinsella Weitzman Iser Kump & Aldisert, Lawrence Y. Iser, Patricia A. Millett and Kristen L. Spanier for Defendant and Respondent.

_____

In a first amended complaint, plaintiff and appellant Technology from Heaven Unlimited brought a civil action for damages against defendant Mattel, Inc., for misappropriation of a toy idea.[1] The first amended complaint alleged two causes of action: 1) tortious/property-based misappropriation of an idea, and 2) breach of contract-based misappropriation of an idea. The trial court sustained defendant's demurrer without leave to amend on both causes of action and ordered the case dismissed with prejudice.

The parties do not dispute New York law governs this appeal based on an agreement executed between the parties prior to the submission of the toy idea.[2] The trial court ruled New York law required plaintiff to plead facts that showed the idea was novel in absolute terms on both causes of action. On appeal, as argued at the trial court, plaintiff relies on *Keller v. American Chain Co.* (1930) 255 N.Y. 94 (*Keller*) and *Apfel v. Prudential-Bache Securities Inc.* (1993) 81 N.Y.2d 470 (*Apfel*) and contends a "pre-disclosure" contract existed between the plaintiff and defendant requiring only a showing of "limited novelty" (as opposed to "general novelty") on the contract-based cause of

---

[1] The idea involves three versions of a Barbie figurine flying on a drone.

[2] Mattel's Submission Agreement, which the parties executed, contains a choice-of-law clause for the application of New York law. As a general structure, New York's state court system consists of three levels: Court of Appeals (highest appellate court), Appellate Department of the Supreme Court (Intermediate appellate court) and Supreme Court (trial court of general jurisdiction).

action and that its pleading sufficiently established such facts.[3] In plaintiff's opening brief, plaintiff also contended the first amended complaint adequately pleaded facts constituting general novelty. Plaintiff, however, abandoned this contention in its reply brief, instead arguing the pleadings sufficiently established limited novelty to the buyer.

We agree with the trial court that both causes of action in the first amended complaint required a greater showing of novelty than just to the buyer. As such, we need not analyze whether the plaintiff sufficiently pleaded facts for the lesser showing of limited novelty to the buyer. We therefore affirm.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Technology from Heaven Unlimited is a California non-profit corporation who invents toys. Clayton Golliher is the founder and CEO of the plaintiff. Mr. Golliher serves as a pastor of the Christian congregation of the ministry. Defendant Mattel,

---

[3]   The terms "limited novelty" and "general novelty" are not specifically used in any of New York's published cases cited by the parties. Instead, these terms were defined by plaintiff in its opening brief as follows:

" 'General novelty' (aka 'originality' or 'absolute novelty') means information generally unknown and unavailable to the public at large (e.g., the existence and contagiousness of the COVID-19 virus before February 1, 2020)." (Italics omitted.)

" 'Limited novelty' means information that is open and available to the general public and therefore does not have general novelty (e.g., the published characteristics of a patented item; the published rules of medical science and legal jurisprudence), but is not considered common knowledge because it is novel and unknown to many competent adults." (Italics omitted.)

Inc., is a Delaware corporation with its principal place of business located in Los Angeles County, California. Defendant is a successful manufacturer of toys which includes the well-known "Barbie" brand aimed at girls aged three to 12 years old.

The first amended complaint alleged that in early 2014, plaintiff heard that defendant sought to develop a toy featuring a Barbie figurine on a flying mechanism that could be operated by a young female consumer. Based on the rumor, plaintiff began work on creating a flying Barbie toy with a plan to submit the idea to the defendant.

In July of 2014, defendant informed the plaintiff that the previous idea submission protocol had been changed with a new online process called Mattel Inventor Connect ("MIC"). Plaintiff was advised that to submit an idea through MIC, inventors were required to complete an MIC application and execute a "Submission Agreement."

The Submission Agreement contained eight (8) clauses. It provided, *inter alia*, that the submission, "do not create any financial, equitable or other obligations" and that "[a]ny such obligations may arise only in another separate written agreement that is physically signed by [the inventor] and an officer of [defendant]." The Submission Agreement also specified that "[n]o rights, duties or obligations may be read into this Agreement or the relationship of the parties under any theory, such as custom, trade usage, course of dealing, course of performance, or implied contract." Plaintiff executed the Submission Agreement.

The first amended complaint describes the flying Barbie concept as follows: "By August 2014, [plaintiff] was successful in creating a concrete, novel flying Barbie toy concept that utilized a four propeller drone as the mechanism to make Barbie fly; and

4

presented Barbie as an action figure in three different interlocking configurations: (a) Barbie standing on a drone in the configuration of a hover board; (b) Barbie hanging from the drone in the configuration of a hang glider; and (c) Barbie as a fairy with the drone in the configuration of fairy wings." (Italics omitted.)

Beginning around August of 2014, plaintiff presented its flying Barbie concepts to the defendant through the MIC. The submission consisted of still photos and a video. While the submission was made to several different departments within the defendant's departments, only the Barbie brand/department, through Helen De La Cruz, communicated interest. Through various correspondences, a meeting was set up at defendant's El Segundo headquarters for December 10, 2014. At the December 10, 2014 meeting, Mr. Golliher, as CEO of the plaintiff, explained to the defendant's staff that the prototype's flight control technologies were probably too complex for the young Barbie consumers but that an "auto hover" technology was easier and more appropriate. To demonstrate the auto hover technology, Mr. Golliher had purchased a toy that employs this technology from a toy store and brought it to the meeting. Mr. Golliher indicated he had entered collaboration with a group called BrixnClix to provide the auto hover technology. On December 11, 2014, a day after the meeting, defendant informed plaintiff that it was not interested in moving forward with the submitted concepts.

Around February 16, 2016, defendant released a new toy called the Barbie Starlight Adventure. Plaintiff contends the new Barbie toy contained two features from its submission: 1) Barbie presented as an action figure standing on top of a flying

drone hover board, and 2) the ease of use for young Barbie consumers regarding the auto launch, auto hover, auto land, auto pilot flight control technology (auto hover technology) in conjunction with override capability. Thereafter, plaintiff contacted the defendant to inform its belief defendant had used two features from its toy idea submission and requested the defendant to pay a reasonable compensation. Defendant declined.

On July 20, 2019, plaintiff filed the first amended complaint which alleged three causes of action: 1) first cause of action for tortious/property-based misappropriation of an idea, 2) second cause of action for breach of contract-based misappropriation of an idea, and 3) third cause of action for copyright infringement. Five days later, plaintiff moved to dismiss the third cause of action for copyright infringement, leaving the first amended complaint with the other two causes of action. Defendant demurred.

The demurrer was heard on September 24, 2019. At the hearing, relying on *Keller* and *Apfel*, plaintiff argued general novelty is not required on the second cause of action for contract-based misappropriation of an idea. Plaintiff posited that in a pre-disclosure contract dispute for misappropriation of an idea, the strict requirement of novelty in New York law is relaxed. Rather than requiring novelty to the world at large, plaintiff reasoned the novelty, or, the newness of the idea, applied only to the buyer.

When asked by the trial court whether additional facts could be alleged if absolute novelty was the standard, plaintiff indicated its belief sufficient facts were presented in the first amended complaint.

6

The trial court ruled the following day. Relying on *Lapine v. Seinfeld* (2011) 31 Misc.3d 736,[4] the trial court reasoned, under New York law, both the first cause of action for tortious/property-based misappropriation of an idea, and the second cause of action for breach of contract-based misappropriation of idea, required novelty in absolute terms, not just to the buyer, which plaintiff had failed to plead. Final judgment of dismissal was entered on October 9, 2019. This appeal followed.

## II. STANDARD OF REVIEW

In reviewing the sufficiency of a complaint for a sustained demurrer, the standard of review is well-settled. "We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed." (*Serrano v. Priest* (1971) 5 Cal.3d 584, 591 [96 Cal.Rptr. 601, 487 P.2d 1241], superseded by statute on other grounds as stated in *Crawford v. Huntington Beach Union High School Dist.* (2002) 98 Cal.App.4th 1275, 1286 [121 Cal.Rptr.2d]; Cal. Const., art. IX, § 5 ["Legislature shall provide for a system of common

---

[4] Under New York statutory law, published Supreme Court decisions may be cited as precedent. See New York Judicial Law section 431 which states. "The law reporting bureau shall report every cause determined in the court of appeals and every cause determined in the appellate divisions of the supreme court, unless otherwise directed by the court deciding the cause; and, in addition, any cause determined in any other court which the state reporter, with the approval of the court of appeals, considers worthy of being reported because of its usefulness as a precedent or its importance as a matter of public interest. [¶] Each reported decision shall be published as soon as practicable after it is rendered."

schools by which a free school shall be kept up and supported"].)
We give the complaint a reasonable interpretation, reading it as a
whole and its parts in their context. (*Speegle v. Board of Fire
Underwriters* (1946) 29 Cal.2d 34, 42 [172 P.2d 867], superseded
by statute on another point *R.E. Spriggs v. Adolph Coors Co.*
(1974) 37 Cal.App.3d 653.) When a trial court sustains a
demurrer, we determine whether the complaint states facts
sufficient to constitute a cause of action. (See *Hill v. Miller*
(1966) 64 Cal.2d 757, 759 [51 Cal.Rptr. 689, 415 P.2d 33].)
"Nevertheless, if no liability exists as a matter of law, we must
affirm that part of the judgment sustaining the demurrer, and if
the plaintiff cannot show an abuse of discretion, the trial court's
order sustaining the demurrer without leave to amend must be
affirmed." *(Gutkin v. University of Southern California*, (2002)
101 Cal.App.4th 967, 975-976 [125 Cal.Rptr.2d 115].)

## III.   DISCUSSION

### A.   Types of Misappropriation Claims

Based on our reading of New York cases, claims for alleged
misappropriation of an idea may be classified into two categories
with one category consisting of two sub-parts. First are property
right claims. This is a broad category with boundaries not clearly
defined. Second are contract-based claims which fall into two
sub-parts: 1) claims of breach of contract entered prior to the
disclosure of the idea, and 2) claims of breach of contract entered
after the disclosure of the idea. Keeping these categories and
sub-parts in mind is helpful to understand New York's legal
territory in this area of the law.

8

**B. New York Law on Misappropriation of an Idea**

**1. General Standard**

Under New York law, a civil action for damages that claim misappropriation of an idea requires two essential elements: 1) a legal relationship must exist between the parties, and 2) the idea must be novel and concrete. (See *McGhan v. Ebersol* (S.D.N.Y. 1985) 608 F.Supp. 277, 284.) In the instant appeal, the plaintiff's main contention relates to the second element of novelty.

**2. Downey v. General Foods Corp.**

On the issue of novelty, we start by reviewing the pertinent published opinions of the New York's highest court, the Court of Appeals. One of the seminal New York cases on misappropriation of an idea is *Downey v. General Foods Corp.* (1972) 31 N.Y.2d 56 (*Downey*). *Downey* is a property right case.

In *Downey,* the plaintiff wrote several letters to the defendant (General Foods) and sent an "Idea Submittal Form" suggesting the product "Jell-O" be renamed "Wiggley" or some variation thereof, to be marketed to children. (*Downey*, *supra*, 31 N.Y.2d at p. 59.) Defendant acknowledged receipt of the letters and the Idea Submittal Form and informed plaintiff that it had no interest in the plaintiff's idea. (*Id*. at p. 60.) Several months later, defendant introduced into the market a Jell-O product named "Mr. Wiggle." Plaintiff alleged misappropriation of an idea and filed suit for damages. (*Ibid*.)

The *Downey* court noted, "[t]he critical issue in this case turns on whether the idea suggested by the plaintiff was original or novel. An idea may be a property right. But, when one submits an idea to another, no promise to pay for its use may be implied, and no asserted agreement enforced, if the elements of novelty and originality are absent, since the property right in an

9

idea is based upon these two elements." (*Downey*, *supra*, 31 N.Y.2d at p. 61.) The *Downey* Court went on to reason, "[i]n the case before us, the record indisputably establishes, first, that the idea submitted -- use of a word ('wiggley' or 'wiggle') descriptive of the most obvious characteristic of Jell-O, with the prefix 'Mr.' added -- was lacking in novelty and originality . . . ." (*Id.* at pp. 61-62.)

### 3. Apfel v. Prudential-Bach Securities Inc.

Twenty-one years later, the New York Court of Appeals published *Apfel*. (*Apfel*, *supra,* 81 N.Y.2d 470.) *Apfel* is a contract-based claim that falls into the sub-part of a post-disclosure agreement. In *Apfel,* the High Court of New York distinguished the *Downey* rule in the context of a "post-disclosure" agreement between the parties. *Apfel f*ocused on the question of the existence of a valid consideration, not whether the idea was novel.

The facts in *Apfel* are illustrative of this separate rule. Plaintiffs were an investment banker and a lawyer who proposed to defendant, an investment bank, a method of issuing municipal bonds to be sold, traded, and held, without the issuance of a paper certificate by means of a computer entry. After the plaintiff disclosed the idea to the defendant, the parties negotiated and entered into an agreement "under which plaintiffs conveyed their rights to the techniques and certain trade names and defendant agreed to pay a stipulated rate based on its use of the techniques for a term from October 1982 to January 1988. Under the provisions of the contract, defendant's obligation to pay was to remain even if the techniques became public knowledge or standard practice in the industry and applications for patents and trademarks were denied." (*Apfel, supra,*

10

81 N.Y.2d at p. 474.) To reiterate the point, after the idea was disclosed, the defendant entered into an agreement to pay and use the plaintiff's idea.

After several years of fulfilling the terms of the contract, the defendant refused to make additional payments indicating the plaintiff's idea had been in the public domain at the time of the agreement and that the idea was never the plaintiff's to sell. The plaintiff sued on several grounds including breach of contract for damages. (*Apfel, supra,* 81 N.Y.2d at p. 874.) The defendant contended that no contract existed between the parties because the agreement lacked consideration – that an idea cannot be legally sufficient consideration unless it is novel. (*Id*. at p. 475.)

As noted before, *Apfel* turned on the issue of consideration. The *Apfel* court reasoned, "[u]nder the traditional principles of contract law, the parties to a contract are free to make their bargain, even if the consideration exchanged is grossly unequal or of dubious value [citations]. Absent fraud or unconscionability, the adequacy of consideration is not a proper subject for judicial scrutiny [citation]. It is enough that something of 'real value in the eye of the law' was exchanged [citations]. The fact that the sellers may not have had a property right in what they sold does not, by itself, render the contract void for lack of consideration [citations]." (*Apfel, supra,* 81 N.Y.2d at pp. 475-476.)

The *Apfel* court explained, defendant received consideration even though the idea was not novel. The court said, "[m]anifestly, defendant received something of value here; its own conduct establishes that. After signing the confidentiality agreement, defendant thoroughly reviewed plaintiffs' system before buying it. Having done so, it was in the best position to know whether the idea had value. It decided to enter into the

11

sale agreement and aggressively market the system to potential bond issuers. . . . defendant can hardly claim now the idea had no value to its municipal securities business. Indeed, defendant acknowledges it made payments to plaintiffs under the sale agreement for more than two years, conduct that would belie any claim it might make that the idea was lacking in value or that it had actually been obtained from some other source before plaintiffs' disclosure." (*Apfel, supra,* 81 N.Y.2d at p. 476.)

*Apfel* explains with clarity why, in the context of a post-disclosure agreement to use an idea, the issue of novelty is not relevant. It said, "[w]hen a seller's claim arises from a contract to use an idea entered into *after* the disclosure of the idea, the question is not whether the buyer misappropriated property from the seller, but whether the idea had value to the buyer and thus constitutes valid consideration. In such a case, the buyer knows what he or she is buying and has agreed that the idea has value, and the Court will not ordinarily go behind that determination. The lack of novelty, in and of itself, does not demonstrate a lack of value [citation]." (*Apfel, supra,* 81 N.Y.2d at p. 478.) *Apfel* is a case that turns on the question of consideration because the existence of a contract between the parties after the information was disclosed was not in dispute.

In dicta, *Apfel* discussed contract claims based on a pre-disclosure agreement. The *Apfel* court wrote, "[t]hese decisions do not support defendant's contention that novelty is required in all cases involving disclosure of ideas. Indeed, we have explicitly held that it is not [see *Keller, supra,*] 255 NY 94). *Downey, Soule* and cases in that line of decisions involve a distinct factual pattern: the buyer and seller contract for *disclosure* of the idea with payment based on use, but no separate postdisclosure

12

contract for *use* of the idea has been made.  Thus, they present the issue of whether the idea the buyer was using was, in fact, the seller's."  (*Apfel, supra*, 81 N.Y.2d at p. 477-478.)

The *Apfel* court continued, "[s]uch transactions pose two problems for the courts.  On the one hand, how can sellers prove that the buyer obtained the idea from them, and nowhere else, and that the buyer's use of it thus constitutes misappropriation of property?  Unlike tangible property, an idea lacks title and boundaries and cannot be rendered exclusive by the acts of the one who first thinks it.  On the other hand, there is no equity in enforcing a seemingly valid contract when, in fact, it turns out upon disclosure that the buyer already possessed the idea.  In such instances, the disclosure, though freely bargained for, is manifestly without value.  A showing of novelty, at least novelty as to the buyer, addresses these two concerns.  Novelty can then serve to establish both the attributes of ownership necessary for a property-based claim and the value of the consideration--the disclosure--necessary for contract-based claims."  (*Apfel, supra,* 81 N.Y.2d at p. 478.)

The *Apfel* court further explained, in post-disclosure contract cases, the issue of where the idea originated does not exist.  In making this distinction between the post-disclosure and pre-disclosure claims, the *Apfel* court appeared to imply a three-level approach:  1) property-based claims require uniqueness and novelty, 2) pre-disclosure contract-based claims require novelty to the buyer (to determine whether a valid consideration existed), and 3) post-disclosure contract-based claims require no resolution of novelty.  The *Apfel* court, however, did not expressly hold as such.

13

## C. Plaintiff's Primary Contention

Based on *Apfel's* dicta, plaintiff contends a transaction that contains only a pre-disclosure agreement, and no post-disclosure agreement, pursuant to which an idea with only a limited novelty (and not general novelty) is disclosed by seller to buyer legally supports a contract-based misappropriation claim.

Plaintiff also relies on *Keller*. (*Keller, supra*, 255 N.Y. 94.) *Keller*, like *Apfel*, is a "consideration" case. *Keller* involved a seller and purchaser of tire chains. In the business model between the supplier and purchaser of tire chains, freight for the shipment of the tire chains was to be paid by the supplier through the purchaser. Plaintiff worked for the purchaser and, through research, discovered the freight charged by the rail companies was too high. Plaintiff approached the supplier (defendant) to negotiate a contract for this information so that the seller would pay less on freight for the shipment of tire chains. (*Id.* at p. 96.) Although no written contract was signed, plaintiff sought one-third of the savings, which according to the plaintiff, the defendant assented. Thereafter, plaintiff supplied the information to the defendant. (*Id.* at p. 97.)

The defendant refused to recognize the existence of the contract. Thereafter, plaintiff sued. After a verdict for the plaintiff, the trial court set aside the verdict and dismissed the complaint. The Appellate Division of the Supreme Court affirmed the trial court's judgment. The *Keller* court affirmed the appellate division, but in doing so, discussed the "consideration" question. (*Keller, supra*, 255 N.Y. at p. 97.)

Defendant argued there was no contract between the parties for lack of consideration because the information imparted was "nothing new, being an idea open and apparent to

14

everyone, and well known for years." (*Keller*, *supra*, 255 N.Y. at p. 97.) Based on the complexity of the information and the work done to obtain it, the *Keller* court disagreed and observed, the "information may be a valuable consideration for a promise to pay . . . ." (*Ibid.*) While it is not crystal clear from the recitation of facts in the case, the disclosure of information concerning the lower freight costs appears to have been provided after the alleged consummation of the oral agreement. The *Keller* court ultimately determined, however, that because of the fiduciary relationship plaintiff "could not . . . bind the defendant to a promise based upon a consideration of receiving that to which it was legally entitled." (*Id.* at p. 100.)

The actual holding in *Apfel* which modified the *Downey* rule in post-disclosure agreement cases does not support plaintiff's contention. *Apfel*'s dicta, which cites *Keller* arguably does. *Keller*, published in 1930 has not been cited by recent New York published cases alleging civil action on misappropriation of ideas. New York courts appear to have drawn a two-part distinction: *Downey* as a general rule, and *Apfel*, for post-disclosure agreements.

Plaintiff cites *Nadel v. Play-By-Play Toys & Novelties, Inc.* (2d Cir. 2000) 208 F.3d 368 (*Nadel*), to support its position that a pre-disclosure agreement only requires "limited novelty" to the buyer. *Nadel*, a federal case, is not binding on this court but may be persuasive.[5]

---

[5] Federal circuit court opinions do not bind California courts, but they "may serve as persuasive authority." (*People v. Memro* (1995) 11 Cal.4th 786, 882 [47 Cal.Rptr.2d 219, 905 P.2d 1305], overruled on other grounds in *People v. Gaines* (2009) 46 Cal.4th 172, 181, fn. 2.)

In *Nadel*, the plaintiff, a toy inventor presented an idea for a table top monkey toy to the defendant who expressed interest. Thereafter, plaintiff sent a prototype of the toy to the defendant who kept the toy for several months. Before returning the toy to the plaintiff, the defendant introduced a Tazmanian Devil toy which contained features similar to the plaintiff's prototype. (*Nadel*, *supra*, 208 F.3d at p. 372.)

Plaintiff brought a civil action for breach of contract, quasi-contract and unfair competition in federal district court. The district court granted summary judgment in favor of the defendant on the ground the plaintiff was not entitled to recover for misappropriation of an idea unless it was able to show the idea was novel and original. (*Nadel*, *supra*, 208 F.3d at p. 373.) Relying on *Apfel*, the circuit court reversed. It held, "[f]or contract-based claims in submission-of-idea cases, a showing of novelty to the buyer will supply sufficient consideration to support a contract." (*Id*. at p. 376.)

*Nadel* went on to note, "[m]oreover, *Apfel* made clear that the 'novelty to the buyer' standard is not limited to cases involving an express post-disclosure contract for payment based on an idea's use. The *Apfel* court explicitly discussed the pre-disclosure contract scenario present in the instant case, where 'the buyer and seller contract for *disclosure* of the idea with payment based on use, but no separate postdisclosure contract for the *use* of the idea has been made.'" (*Nadel*, *supra*, 208 F.3d at p. 376.)

While *Nadel* adopted *Apfel's* dicta as an actual rule and applied the "novelty to the buyer" standard in a pre-disclosure contract-based claim for misappropriation of an idea, no New York court has done so. Plaintiff acknowledges this state of New

16

York law.  He has guided us to four published post-*Apfel* New York decisions adverse to its position.

The most recent case is *Lapine, supra,* 31 Misc.3d 736.  In *Lapine*, the plaintiff, a cook-book author (Author) provided a book proposal including some manuscripts for hiding healthy foods in children's favorite recipes to HarperCollins for potential publication.  HarperCollins rejected the proposal but kept parts of the manuscripts.  Author published the cook-book through another publisher.  Thereafter, HarperCollins published a cook-book with a similar theme.

Author sued Jerry Seinfeld and HarperCollins as defendants.  The suit against Seinfeld, the comedian, for slander is not relevant to our analysis.  The suit against HarperCollins for misappropriation is.  HarperCollins moved to dismiss the complaint on the ground they are defectively pleaded.  (*Lapine, supra*, 31 Misc.3d at p. 741.)  HarperCollins argued the Author's documentary evidence failed to show the requisite novelty.

The *Lapine* court agreed and squarely addressed *Nadel*. The court wrote, "[t]here is federal case law, interpreting New York law, which holds that while novelty and originality in general—i.e., to the world at large—must be shown in order to support a claim for misappropriation, a lesser showing of novelty to the buyer is required in order to support a claim for breach of implied contract.  (See *Nadel* [Citation].)  In this court's opinion, this federal holding is based on a misreading of *Apfel* [Citation]. *Apfel* modifies *Downey* to the extent of holding that the novelty of an idea need not be demonstrated in order to establish a claim for breach of implied contract based on use of an idea without compensation where, subsequent to disclosure of the idea, the parties have entered into a contract for use of the idea.  *Apfel*

17

reasons that in such circumstances, the buyer 'has agreed that the idea has value, and the Court will not ordinarily go behind that determination.  The lack of novelty, in and of itself, does not demonstrate a lack of value.' [Citation.]  In contrast, as the Court further explains, where there has been no post-disclosure contract for use of the idea, proof of novelty is required to establish both that the user of the idea in fact obtained it from the plaintiff and that the idea had value, thus establishing consideration for the contract." (*Lapine, supra*, 31 Misc.3d at p. 744.)

 *Lapine* further addressed *Apfel's* dicta.  The court wrote, "*Apfel* does state that where no post-disclosure contract has been made, '[a] showing of novelty, at least novelty as to the buyer,' addresses these two concerns as to whether the user obtained the idea from the buyer and whether it had value.  [Citation.]  However, this statement is dictum, as *Apfel* involved a post-disclosure contract which was found to obviate the requirement of any showing of novelty."  ( *Lapine, supra*, 31 Misc.3d at p. 744.)  *Lapine* expressly rejected what the plaintiff asks us to do here.

 In *American Business Training Inc. v. American Management Association* (2008) 50 A.D.3d 219 (*American Business Training*), New York's Appellate Division of the Supreme Court applied the *Downey* rule to a pre-disclosure contract-based claim.  In *American Business Training*, plaintiff filed a civil suit for damages alleging seven causes of action for fraud, misappropriation of ideas, breach of a joint venture agreement, unjust enrichment, breach of an implied-in-fact contract, breach of a quasi-contract, and conversion.  (*Id.* at p. 221.)  Plaintiff, American Business Training Inc. ("ABT") was an owner of a management consulting business which, as part of

its business, put on seminars for members of the business community who did not possess a master's degree in business administration ("MBA"). ABT created a five-day seminar providing information on various business topics covered in traditional MBA programs. Running into issues concerning over-head costs, ABT approached the defendant, American Management Association ("AMA") for a potential joint venture. AMA asked ABT to send its brochure of the five-day seminar. ABT did so. Several weeks later, AMA informed ABT that the five-day program was competitive with other programs offered by AMA and declined the offer to collaborate. Several months later, AMA introduced a course entitled "AMA's Five Day MBA . . . Essential Elements" which appeared very similar to ABT's five-day seminar. (*Id*. at pp. 220-221.)

AMA brought summary judgement which the trial court granted. In dismissing the complaint, the trial court agreeing with AMA that ABT had, "failed to establish that the allegedly misappropriated idea possessed the novelty necessary to prevail." (*American Business Training, supra,* 50 A.D.3d at p. 221.)

On appeal, the appellate division noted, "[t]he primary issue is whether plaintiff had an enforceable property right in the idea [plaintiff] disclosed to defendant. The basic, and still applicable, rule was stated by the Court of Appeals in *Downey* [Citation]." (*American Business Training, supra,* 50 A.D.3d at p. 222.) As in the instant appeal, ABT asserted that the *Downey* rule was modified by *Apfel*.

The appellate division disagreed. The court reasoned, "the ruling of *Apfel* concerned a situation where the idea at issue was disclosed to the defendant, and the defendant, *following* its disclosure, entered into a contract to pay the plaintiff for it. In

19

that situation, the Court explained, the plaintiff need not establish that the idea was novel; the circumstances establish that the plaintiff provided something of value to the defendant, and therefore the plaintiff is entitled to the benefit that the contract provided for, in exchange for that consideration." (*American Business Training, supra,* 50 A.D.3d at p. 223.)  The appellate division went on to iterate, "[i]n our view, the *Downey* rule was only modified to the extent that a party who claims that an idea was misappropriated need not establish that the idea was novel and original *if* its value to the defendant was established by the creation of a contract between the parties following disclosure of the idea to the defendant." (*Ibid.*)  The appellate division's conclusion, reached eight years after *Nadel* was published, is in direct contradiction to the holding in *Nadel.*  We are bound by the choice-of-law clause in the Submission Agreement to follow New York law.

The other two cases, *Oasis Music, Inc. v. 900 U.S.A., Inc.* (1994) 161 Misc.2d 627 (*Oasis*), and *Marraccini v. Bertelsmann Music Group, Inc.* (1996) 221 A.D.2d 95, are equally unavailing to the plaintiff's position.  Both *Oasis* and *Marraccini* applied the greater novelty standard to factual scenarios that may be classified as pre-disclosure agreement claims for contract-based misappropriation of an idea.[6]

Admittedly, this area of the law is somewhat murky. However, plaintiff has not provided, and we have been unable to find, any New York published case holding that only novelty to

---

[6]    *Oasis* quoted *Apfel's* dicta on novelty to the buyer but appeared to apply an absolute novelty standard in its analysis. (See *Oasis*, *supra*, 161 Misc.2d at p. 630.)

the buyer is required for a claim of pre-disclosure contract-based misappropriation of an idea. To the contrary, New York courts have limited *Apfel's* modification of the *Downey* rule to only circumstances where, after the disclosure, the seller and buyer enter into an agreement for the purchase of the idea. As such, we hold that the *Downey* rule applies to the instant case requiring a greater showing of novelty.

We need not address whether the plaintiff sufficiently pleaded facts showing limited novelty to the buyer, whether the Submission Agreement was unconscionable (which is relevant if we applied the "novelty to the buyer" standard), or whether a legal relationship existed between the plaintiff and the defendant.

## DISPOSITION

The order of dismissal entered on October 9, 2019 is affirmed. Defendant to recover costs on appeal.




OHTA, J.*


We concur:




GRIMES, Acting P. J.                    WILEY, J.

---

\*        Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

21